**KELLEY et ux. v. TEXAS UTILITIES CO.**

No. 3655.

Court of Civil Appeals of Texas. El Paso.
March 24, 1938.

Rehearing Denied April 7, 1938.

W. F. Schenck, of Lubbock, and R. L. Graves, of Brownfield, for appellants.

Robertson, Leachman, Payne, Gardere & Lancaster, of Dallas, and Crenshaw & Dupree, of Lubbock, for appellee.

NEALON, Chief Justice.

The parties in this case will be referred to as they were designated in the district court. Arcado Kelley and wife, as plaintiffs, sued Texas Utilities Company, alleging that through the latter's negligence their son, E. J. Kelley, was killed, thereby causing them to incur damages in the sum of $30,000. From the record it appears that on June 11, 1936, the deceased boy, who was twelve years old, accompanied by another boy nine years of age, were grazing some cattle on the west side of a road in Gaines county about a mile and a half from the plaintiffs' home. They began playing on the west side of the road. They twisted together several pieces of wire to a length of about 30 feet, tied a stone to one end and a can to the other, crossed the road, and threw the stone over a high-voltage transmission wire of defendant. This transmission wire carried in excess of 6,000 volts. The wire with which the boys were playing came to rest over the middle or second line maintained by defendant and conducted the electricity from that wire into the body of the boy to such an extent as to cause his immediate death. The place at which all of this took place was, according to the evidence, on a road west of the town of Seagraves, in Gaines county. The road was still being used to some extent as a public road, though most persons used another and newer highway a short distance away. Defendant's wire, with which the wire thrown by decedent came in contact, was uninsulated. The only evidence introduced as to the efficiency of insulation of outdoor wires carrying in excess of 600 volts was that they afforded no protection; and that in the instant case insulation would not have saved the boy, but that he would have been killed instantly. Under the uncontradicted evidence it was necessary to carry a voltage of about 6,000 volts over the line in question to effect service between Seagraves and Seminole. The place at which this tragedy took place was on a road that was little frequented, and was not in proximity to any school or playground or settlement at which children might be expected to gather. There were no posted notices or other signs to warn of the danger of coming in contact with defendant's wires. Plaintiff Arcado Kelley expressed the opinion that defendant's wires sagged to about 12 feet above the ground after the accident. He testified, however, that he did not know anything "about it before." He also testified that he had warned the boy that the wires were dangerous. The manager of defendant testified that he made a measurement to ascertain the height of the wire at the particular point under investigation, using a cloth

tape, and that the lower wire was 19 feet and 6 inches above the ground, and the middle wire, with which decedent made contact, was 22 feet above the ground. The court instructed a verdict for defendant and entered judgment accordingly. From this judgment plaintiffs, as appellants herein, prosecute this appeal.

### Opinion.

In addition to urging that the wire in question constituted an attractive nuisance and that, therefore, there was liability upon the part of defendant, the plaintiffs insisted that defendant was negligent in permitting the wire to sag to a height short of 22 feet above the ground, and in failing to place warning signs or signals giving notice of the danger. They also insisted that defendant had no right to maintain its wires along the highway, and that such maintenance constituted a violation of article 784 of the Penal Code, basing this contention upon the theory that article 1436, R.C.S., did not grant the right to string power lines along a road, contending that the phrase "over and across" did not include the idea that the right granted extended to maintaining power lines above and "along" public roads outside of cities. From the view that we take of the case it will not be necessary to express an opinion as to this last stated contention.

■ Unless a person of ordinary prudence, in the light of the surrounding facts and circumstances, would reasonably have anticipated that a boy upon the public road would be injured by the power line maintained at the height and in the place that this line was maintained unless warning signs were placed, the court was correct in holding that the proximate cause of the boy's death was not the alleged negligence. In view of repeated decisions in this and other states, the statement of the proposition contains its own answer. An ordinarily prudent person looking at the surroundings as they appeared prior to the time that E. J. Kelley was killed would not reasonably have expected that any person would make contact with the exposed wires in the manner that the deceased boy did. His death was not occasioned through his use of the highway as a highway. The alleged offending wire was not over the generally traveled part of the road. The Supreme Court, in Brush Electric Light & Power Co. v. Lefevre, 93 Tex. 604, 57 S.W. 640, 642, 49 L.R.A. 771, 77 Am.St.Rep. 898, citing Texas & P. R. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162, restated with approval the controlling principle as enunciated by the Supreme Court of the United States in Milwaukee & St. P. Railroad Co. v. Kellogg, 94 U.S. 469, 24 L.Ed. 256: " 'But it is generally held that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.' " See, also, Smith v. Texas Electric Service Co., Tex.Civ. App., 85 S.W.2d 808; Mexican Nat. Ry. Co. v. Mussette, 86 Tex. 708, 26 S.W. 1075, 24 L.R.A. 642.

This holding is in harmony also with the law as declared by courts in other jurisdictions: Green v. West Penn. Rys. Co., 246 Pa. 340, 92 A. 341, L.R.A.1915C, 151, by the Pennsylvania Supreme Court (a boy attached a stone to a spool of fine copper wire near a telephone pole and threw it over defendant's high line, and another boy, who was told of the suspended wire, took hold of it and was injured); Stanley v. Town of Smithfield, 211 N.C. 386, 190 S.E. 207 (a boy was injured by an electric shock when he threw a small wire attached to a spool over a 2,300-volt line 23 feet above the ground where he was playing upon the highway); Dilley v. Iowa Public Service Co., 210 Iowa 1332, 227 N.W. 173 (a nine year old boy in a populous city was killed while flying a kite with a copper kite string which came in contact with defendant's transmission line); Callaway v. Central Georgia Power Co., 43 Ga.App., 820, 160 S.E. 703 (holding that defendant could not reasonably anticipate that one of a number of children playing in the street would throw a loose wire attached to a spool over its high power line); Sweatman v. Los Angeles, etc., Corporation, 101 Cal.App., 318, 281 P. 677 (holding defendant not liable where one engaged in the construction of a building and in moving a metal rod stuck it through a window thereby coming in contact with defendant's uninsulated high voltage wire approximately 7 feet away from the side of the building); Troidle v. Adirondack Power & Light Co., 252 N.Y. 483, 169 N.E. 654 (holding that defendant Power Company was not liable for the death of a man who was killed when he threw his radio aerial wire with a string attached over defendant's line); Trout v. Philadelphia Electric Co., 236 Pa. 506, 84 A. 967, 42 L.R.A.,

N.S., 713, (holding that defendant was not liable when injured boy threw a corncob tied to a string over an electric wire and pulled the wire to him, he being on the top of a house and the wire being originally approximately 4 feet and six inches from the house, the court holding that the boy's original independent act could not reasonably have been anticipated, that it brought about the accident, and that this act was not induced by or did not follow as a natural sequence to any negligence of the defendant in connection with its wires); Geroski v. Allegheny, etc., Co., 247 Pa. 304, 93 A. 338, L.R.A.,1915D, 560 (holding that there was no liability upon the part of the Light Company in a case in which the janitor of a building was killed when a wire he used on a flag pole came in contact with defendant's power line while the janitor was adjusting the flag pole wire, and that, though the decedent was ignorant of the nature of defendant's line and the danger attendant upon coming in contact with it, the defendant could not reasonably have anticipated such a concurrence of fortuitous circumstances); Adams v. Bullock, 227 N.Y. 208, 125 N.E. 93 (opinion by Judge Cardozo, holding defendant not liable for injuries resulting to a boy of 12, who, while walking across a bridge, was swinging a wire which came in contact with the trolley wire of defendant located about four and a half feet below the parapet of the bridge, saying "no vigilance, however alert, unless fortified by the gift of prophecy, could have predicted the point upon the route where such an accident would occur"). In Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162, 164, holding that certain acts could not be foreseen by a defendant, Justice Gaines said: "In our opinion, nothing short of a prophetic ken could have anticipated the happening of the combination of events which resulted in the injury of the person of the plaintiff."

The present defendant was not required to foresee the "unforeseeable."

The state of facts in the instant case does not reflect a condition under which plaintiffs can recover under the "attractive nuisance" doctrine. Simonton v. Citizens' Electric Light Co., 28 Tex.Civ.App. 374, 67 S.W. 530; Texas-Louisiana Power Co. v. Bihl, Tex.Com.App., 66 S.W.2d 672; Texas Power & Light Co. v. Burt, Tex.Civ.App. 104 S.W.2d 941.

In harmony with the decision of our Supreme Court declaring the law of the state upon the questions involved, we cannot say that the court erred in instructing a verdict in favor of defendant.

Appellants' assignments of error are, therefore, overruled, and judgment is affirmed.