**BALL et al. v. GULF STATES UTILITIES CO.**

No. 3162.

Court of Civil Appeals of Texas. Beaumont.

Dec. 30, 1938.

Rehearing Denied Jan. 18, 1939.

Gilbert T. Adams, of Beaumont, for appellants.

Orgain, Carroll & Bell, of Beaumont, for appellee.

938

WALKER, Chief Justice.

This suit was filed by appellants, B. B. Ball and wife, the parents of Dewey Maris Ball, a little boy about ten years old, against appellee, Gulf States Utilities Company, for damages for personal injuries suffered by Dewey Maris on the 23d day of July, 1935. Judgment was entered in favor of appellee on an instructed verdict.

Briefly stated, the facts were as follows: Appellee maintains and operates high power lines on the main highway—a public road —between Batson and Saratoga in Hardin County. This road was not paved, but had been graveled, and had been maintained as a public road for more than twenty-eight years. At the point where Dewey Maris was injured, this road runs north and south. Appellee's high power lines are on the west side of the road, and its poles are in a drainage ditch within the boundaries of the right of way of the road, about 1 or 2 feet from the western boundary line of the right of way. The land along the west side of the road is fenced and is in cultivation; the fence is about 4 feet from the west side of the ditch. On the same poles, appellee maintains and operates one telephone line, 14 feet above the ground, and three high power lines, uninsulated, each carrying 66,000 volts of electricity. The middle of the lower high power line is 24.7 feet from the ground; the middle high power line is 30.7 feet; and at its highest point the top line is 35.6 feet, and drops to a distance of 35 feet. Appellee's poles, used to support these wires, are about 300 feet apart. No sign, or anything, is used to distinguish the telephone wire from the high power lines. The high power lines are supported by cross-arms 10 feet long, fastened at their middle to the poles. The high power lines were affixed to insulators which dropped down a distance of 26 inches from the cross-arms. The insulators were affixed to the cross-arms a distance of more than 30 inches on each side of the poles. This separation of the wires from the poles and from each other was for the purpose of preventing electricity from jumping from the wires to the poles and to the other wires. Appellee, prior to the time Dewey Maris was injured, had maintained its poles, telephone line, and high power lines, in the manner described for more than ten years under a franchise from Hardin County, without complaint of any nature from any source whatever. Appellants lived on the Batson-Saratoga high-

way with Mrs. Ball's mother, and within a radius of five or six hundred yards of their home lived the Thomas family and six or seven other families. All of these people constantly used this road and passed to and fro along and underneath appellee's lines. These electric lines do not serve this community, and the people thereabouts derive no benefit from them. During misty and cloudy and foggy weather there are sparks, flashes, balls of fire, and popping noises around these poles and wires which are loud enough to be heard a distance of more than 300 feet.

On the east side of the highway and in front of the Arnold home, there are local telephone lines at a height of approximately 12 feet from the ground.

On the 23d day of July, 1935, Mrs. Ball drove in her automobile to the home of her neighbor, Mrs. Arnold, accompanied by her son, Dewey Maris, and Stephen Hatcher, a little boy about eleven years old. The two little boys remained near the automobile while Mrs. Ball went into the house to see Mrs. Arnold. Stephen had a small wire —an armature wire. He gave Dewey Maris one end of the wire to hold and threw the other end over the telephone wire maintained on the east side of the road. Then, without warning Dewey Maris and without his knowledge—the evidence raised that issue—Stephen threw the wire over the top of appellee's high power lines on the west side of the road. From the contact of the armature wire with the top high power line, Dewey Maris suffered physical injuries and deformities, fearful beyond the power of words to describe.

At the time of the trial, Stephen Hatcher was with his mother in Illinois, and his testimony was not before the jury. It was not shown that Stephen knew appellee's lines were high power lines, or that he understood the nature and danger of high power lines. Dewey Maris testified that he did not know that Stephen was going to throw the armature wire over the high power line; that he would not have held the end of the wire had he known it was going to be thrown over the high power line; that there were no warning signs on the high power lines; that he knew that the wires were high power lines but that he did not know whether or not Stephen knew that the wires were high power lines.

Appellants thus state the purpose of this suit, their grounds of negligence, and their theories of recovery:

"Plaintiffs brought this action against defendant to recover the damages sustained by them and by the child. Two theories of recovery were plead.

"The first theory of recovery was grounded in negligence and proximate cause. The allegations are that the defendant was negligent in:

"1. In maintaining an uninsulated line charged with approximately 66,000 volts of electricity in the public place in question.

"2. In maintaining said high power line without a warning of its dangers.

"3. In maintaining the high power line and telephone lines on same pole without some sign distinguishing the two.

"4. In maintaining said high power line in a public street.

"5. In maintaining a nuisance.

"6. In not constructing said high power line higher than thirty-five feet. It was further alleged that such negligence was a proximate cause of the damages.

"The second theory of recovery was grounded in liability for maintenance of a public nuisance, not the attractive nuisance doctrine. Under this theory, appellant maintains that the erection of high power lines and poles within the boundaries of a public thoroughfare is violation of law and were so maintained without authority from the proper governmental agency. Appellants further contended that having established that the injuries were caused by the act of a third party in conjunction with the defendant's act of maintaining a nuisance, liability follows as a matter of law without any showing of negligence or proximate cause."

## Opinion.

■■■ Because the judgment of the lower court must be affirmed on the theory that the evidence did not raise against appellee the issue of "proximate cause", we pretermit a discussion of the issues of negligence as plead by appellants and, which they assert, were raised by the evidence. We overrule the proposition, that, on the issue of damages flowing from the nature of a nuisance, "liability follows as a matter of law without any showing of negligence or proximate cause." Under the decisions of our Supreme Court, the rules for determining proximate cause are the same, both on the issue of negligence at common law and negligence as the result of failure to observe a statutory duty. In San Antonio & A. P. R. Co. v. Behne, 231 S.W. 354, speaking for our Supreme Court, Judge McClendon said [page 355]: "When it has been once determined that the act or omission complained of is wrongful or negligent, whether as a result of failure to observe a statutory or common-law duty, liability, in either case, is limited to proximately caused injuries. And the rules for determining proximate cause are the same in either case. Denison, B. & N. O. Ry. Co. v. Barry, 98 Tex. [248] 250, 83 S.W. 5; Burnett v. Fort Worth Light & Power Co., 102 Tex. 31, 112 S.W. 1040, 19 L.R.A., N.S., 504; St. Louis Southwestern Ry. Co. v. Wilkes, Tex.Civ.App., 159 S.W. 126; Missouri, K. & T. Ry. Co. v. Dobbins, Tex. Civ.App., 40 S.W. 861; Waterman Lumber Co. v. Beatty, 110 Tex. 225, 227, 218 S. W. 363."

So, whether appellants' cause of action rested upon their allegations and proof of negligence as at comman law or negligence in maintaining a nuisance in the Batson-Saratoga highway, a public road, it was essential that they establish as a fact issue for the jury that such negligence was a proximate cause of the injuries suffered by Dewey Maris. That the facts of this case did not raise against appellee the issue of proximate cause is clearly established by the recent case of Kelley et ux. v. Texas Utilities Co., 115 S.W.2d 1233, by the El Paso Court of Civil Appeals, opinion by Mr. Chief Justice Nealon. Judge Nealon thus stated the facts in that case: "Arcado Kelley and wife, as plaintiffs, sued Texas Utilities Company, alleging that through the latter's negligence their son, E. J. Kelley, was killed, thereby causing them to incur damages in the sum of $30,000. From the record it appears that on June 11, 1936, the deceased boy, who was twelve years old, accompanied by another boy nine years of age, were grazing some cattle on the west side of a road in Gaines county about a mile and a half from the plaintiffs' home. They began playing on the west side of the road. They twisted together several pieces of wire to a length of about 30 feet, tied a stone to one end and a can to the other, crossed the road, and threw the stone over a high-voltage transmission wire of defendant. This transmission wire carried in excess of 6,000 volts. The wire with which the boys were playing came to rest over the middle or second line maintained by defendant and conducted the electricity from that wire into the body of the boy to such an extent as to cause his immediate death. The place at which all of this took

place was, according to the evidence, on a road west of the town of Seagraves, in Gaines county. The road was still being used to some extent as a public road, though most persons used another and newer highway a short distance away. * * * The place at which this tragedy took place was on a road that was little frequented, and was not in proximity to any school or playground or settlement at which children might be expected to gather. There were no posted notices or other signs to warn of the danger of coming in contact with defendant's wires."

Pretermitting a discussion of the theories of negligence advanced in that case, Judge Nealon said, thus stating the law of his facts: "Unless a person of ordinary prudence, in the light of the surrounding facts and circumstances, would reasonably have anticipated that a boy upon the public road would be injured by the power line maintained at the height and in the place that this line was maintained unless warning signs were placed, the court was correct in holding that the proximate cause of the boy's death was not the alleged negligence. In view of repeated decisions in this and other states, the statement of the proposition contains its own answer. An ordinarily prudent person looking at the surroundings as they appeared prior to the time that E. J. Kelley was killed would not reasonably have expected that any person would make contact with the exposed wires in the manner that the deceased boy did. His death was not occasioned through his use of the highway as a highway. The alleged offending wire was not over the generally traveled part of the road. * * * The present defendant was not required to foresee the 'unforeseeable.' "

In support of his conclusion Judge Nealon cited and reviewed the leading authorities in the United States on this point.

The only possible distinction between the facts of the Kelley Case and the facts of the case at bar is the extent to which the two public roads were used and that Dewey Maris was injured near his home, while the Kelley boy was killed about 1½ miles from his home. It is our conclusion that this slight distinction in the facts is not controlling; this conclusion has clear support in the many decisions cited and reviewed by Judge Nealon.

True, our Supreme Court did not refuse a writ of error in the Kelley Case but dismissed the petition for writ of error, W. O. J. However, only one point was discussed by Judge Nealon in that case—the issue of proximate cause. By dismissing the writ of error the Supreme Court approved the judgment entered. That approval rested either on the conclusion of proximate cause, or on a conclusion by the Supreme Court that the evidence did not raise against the appellee the issue of negligence. On the issue of negligence, on the theories of nuisance and at common law, the facts in that case are identical with the facts in the case at bar. In either event, the judgment whether grounded on the conclusion on proximate cause or on an independent conclusion by the Supreme Court, that the evidence did not raise the issue of negligence, the judgment in that case is binding on this court.

This court has given most serious consideration to the issue of proximate cause on the facts of this case. Because the use of electricity is now general all over the United States and, to effectuate that use, high power lines are being strung up and down the highways of the United States, it seems to the writer of this opinion that the courts should re-examine the issue of "foreseeableness" on facts such as we have now before us. With these accidents occurring frequently, as shown by the adjudicated cases, it would seem that the courts could now well say that the "foreseeableness" of such an accident is no longer, as a matter of law, "unforeseeable." In Texas General Utilities Co. v. Nixon, 81 S. W.2d 250, this court held, as against the general demurrer, that the Electric Company should have foreseen that a boy would climb a tree. But it is the constitutional duty of the Courts of Civil Appeals to apply to the facts before them the law as announced by the Supreme Court, and, under the law, as we understand it, the judgment of the lower court must be affirmed, and it is accordingly so ordered.

Affirmed.

### On Rehearing.

Appellants ask that we find as facts that appellee was guilty of negligence in certain respects assigned in their motion for rehearing. Our opinion concedes that the evidence raised against appellee, as jury issues, the several acts of negligence brought forward in the motion, and that Dewey Maris Ball was not guilty of contributory negligence as a matter of law.

As against the instructed verdict, our fact findings should not go beyond these fact conclusions.

Appellants' motion for rehearing, and motion for additional fact conclusions except as herein granted, are overruled. The motion for oral argument is also overruled.