Jeff WENTWORTH, Relator,

v.

Fred MEYER, as Chairman of the State Republican Executive Committee, Respondent.

No. 04–92–00281–CV.

Court of Appeals of Texas, San Antonio.

June 26, 1992.

Concurring Opinion of Justice Chapa July 15, 1992.

Dissenting Opinion of Justice Biery July 15, 1992.

Randall Buck Wood, Ray, Wood & Fine, Austin, John E. Clark, Goode, Casseb & Jones, Robert John Myers, Willis, Hickey, Hougham & Myers, San Antonio, for relator.

Robert D. Daniel, Daniel & Lezar, L.L.P., Houston, Kenneth W. Anderson, Jr., Vaughan & Anderson, Dallas, Harold D. Hammett, Fort Worth, J. Patrick Wiseman, Wiseman, Durst & Tuddenham, Austin, Mike Grimes, Grimes, Zimmern & Associates, P.C., Round Rock, Javier P. Guajardo, Sp. Asst. Atty. Gen., Austin, for respondent.

Before REEVES, C.J., and CHAPA and BIERY, JJ.

## ON RELATOR'S PETITION FOR WRIT OF MANDAMUS

REEVES, Chief Justice.

Relator Jeff Wentworth seeks a writ of mandamus directing respondent Fred Meyer, Chairman of the State Republican Executive Committee, to place Wentworth's name on the November, 1992 general election ballot as Republican Party nominee for state senate, district 26. Meyer determined that Wentworth is ineligible to be a candidate for that office according to the provisions of TEX.CONST. art. III, § 19, because the board of regents term to which Wentworth had been appointed will not have expired by the time he would take office as senator. We deny the petition for writ of mandamus.

■ A "court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election ...,  regardless of whether the person responsible for performing the duty is a public officer." TEX.ELEC.CODE ANN. § 273.061 (Vernon 1986). The writ will issue to enforce a duty placed by the election code on an officer of a political party. TEX.ELEC. CODE ANN. § 161.009 (Vernon 1986). *See also Oney v. Ammerman,* 458 S.W.2d 54, 54 (Tex.1970) (writ will issue only upon a showing that an election officer has failed to perform a duty "clearly fixed and required by the law."). This standard is in line with the traditional use of the writ to compel the performance of a ministerial act or duty. *See Walker v. Packer,* 827 S.W.2d 833, 838–39 (Tex.1992).

■ Mandamus will also issue to correct a "clear abuse of discretion." *Id.* at 839. A clear abuse of discretion occurs whenever the trial court reaches a decision that is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). A relator who attacks the ruling as an abuse of discretion has the heavy burden to establish, under the circumstances of the case, that the facts and law permit the trial court to make but one decision. *Id.* Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Walker,* at 839; *Johnson* 700 S.W.2d at 918. We see no reason to review the actions of an election officer by a different standard than those of a trial judge.

Wentworth raises three arguments: he is not constitutionally ineligible to stand as a candidate for state senator, his eligibility for office has been established by the doctrines of res judicata and law of the case, and Meyer abused his discretion in declaring him ineligible because the public record

does not conclusively establish his ineligibility.

## I.

On April 24, 1992, following a runoff election in which Wentworth was selected by the Republican voters of his district as nominee for state senator, Meyer certified to the Secretary of State that Wentworth was the Republican Party's nominee for that office. Wentworth received from Meyer a certificate of nomination. Three weeks later, however, Meyer sent notification to Wentworth and to the Secretary of State that Wentworth is ineligible to hold that office. *See* TEX.ELEC.CODE ANN. § 145.003 (Vernon 1986).

■ In his letter to Wentworth, Meyer cited article III, section 19 as authority for his decision. That section provides:

No judge of any court, Secretary of State, Attorney General, clerk of any court of record, or any person holding a lucrative office under the United States, or this State, or any foreign government shall *during the term for which he is elected or appointed,* be eligible to the Legislature.

(emphasis added). One ineligible to hold an office cannot be a candidate for that office. TEX.ELEC.CODE ANN. § 141.001(a) (Vernon 1986). On March 24, 1987, Wentworth was appointed by the Governor and confirmed by the senate to be a member of the Board of Regents of the Texas State University System for a six-year term expiring February 1, 1993.[1] He was confirmed by the senate on April 9, 1987. The term of the legislative office Wentworth seeks will commence on January 12, 1993, and overlaps by 19 days the term of office as regent.

Wentworth resigned his position as regent on May 10, 1988, over four years ago, to take office as a state representative. Wentworth was elected to the house of representatives in a special election held in May 1988. He was sworn in the day after he resigned his position as regent. He was

---

**1.** No one contends that the office of regent is not a "lucrative office" as that term is used in section 19.

re-elected to the house in November 1988 and November 1990. He is presently a member of that body, and his current term does not expire until the 73rd Legislature convenes on January 12, 1993.

Any constitutional or statutory provision that restricts the right to hold public office is to be strictly construed in favor of eligibility. *Dawkins v. Meyer*, 825 S.W.2d 444, 448 (Tex.1992); *Willis v. Potts*, 377 S.W.2d 622, 623 (Tex.1964). On the other hand, we are not free to question the wisdom of the constitution, but we must give full effect to its plain language. *Dawkins*, 825 S.W.2d at 448. In construing the language of the constitution, we consider the intent of the people who adopted it. *Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391, 394 (Tex.1989). Because of the inherent difficulty in determining the intent of voters over a century ago, we must rely heavily on the constitution's literal text. *Id.* Further, we are duty-bound to follow the decisions and authoritative expressions of the supreme court. *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989); *Lumpkin v. H & C Communications, Inc.*, 755 S.W.2d 538, 540 (Tex. App.—Houston [1st Dist.] 1988, writ denied).[2]

The "during the term" phrase of section 19 has always been literally construed. In *Lee v. Daniels*, 377 S.W.2d 618 (Tex.1964), Sam Jorrie, a Bexar County Commissioner, resigned his office effective February 1, 1964, so he could enter the primary in May of that year to run for the house of representatives. A party official was mandamused to remove his name from the ballot because his commissioners' court term would overlap the house term he sought by nearly two months. The supreme court held that Jorrie was ineligible. The court held that under section 19 it is the term that controls; Jorrie was ineligible to hold

legislative office during the term of office of county commissioner to which he had been elected. *Id.* at 619–20. Nothing Jorrie did after he qualified for and began holding his office as commissioner, *including his resignation*, could affect his eligibility. *Id.* at 620. "We construe the constitutional provision as allowing *no exceptions* as to ineligibility once it has been established." *Id.* (emphasis added).

A similar result was reached in *Kirk v. Gordon*, 376 S.W.2d 560 (Tex.1964). In *Kirk*, the supreme court held that district attorney Tom Todd was ineligible to be a candidate for state representative. The court relied on section 19 and on Tex.Const. art. III, § 4, which provides that representatives' terms "shall be two years from the day of their election." Because Todd, if elected, would commence his house term in November, that term would overlap his term as district attorney, which would not expire until the end of that year. *Kirk*, 376 S.W.2d at 561.

When Wentworth took office as regent, he became ineligible for a legislative office that would commence prior to the expiration of his term as regent. Once this ineligibility is established, section 19 provides no exceptions that would allow Wentworth to hold such office. *Lee*, 377 S.W.2d at 620.

> Since it is the term which controls, it makes no material difference whether the holder of the office resigns the day after he actually begins holding that office, the day of filing for the office of legislator, or the day before the election at which time the term of office of members of the Legislature begins.

*Id.* at 619. We are bound by the interpretation of section 19 as enunciated by the supreme court in *Lee* and *Kirk*. We thus have no choice but to apply that interpreta-

---

2. The dissent cites *Plessy v. Ferguson*, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896) and argues that it would still be the law if we were absolute slaves to stare decisis. We would remind our brother that the pernicious doctrine of "separate but equal," affirmed by the Supreme Court in *Plessy*, was abandoned, not by an intermediate court of appeals, but by that same Supreme Court. *See Brown v. Board of*

*Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). Further, our duty to follow supreme court decisions is independent of the doctrine of stare decisis. *Humble Oil & Refining Co. v. State*, 158 S.W.2d 336, 338 (Tex.Civ. App.—Austin 1942, writ ref'd). It is a duty of constitutional dimension. *Ball v. Gulf States Utils. Co.*, 123 S.W.2d 937, 940 (Tex.Civ.App.— Beaumont 1938, writ dism'd).

tion in this case and to hold that Wentworth is ineligible for the office he seeks.[3]

Wentworth relies largely on *Spears v. Davis*, 398 S.W.2d 921 (Tex.1966). In that case relators Franklin Spears and Galloway Calhoun, Jr., who were then state senators, sought writs of mandamus ordering Will D. Davis, the chairman of the State Democratic Executive Committee, to place their names on the primary ballot as candidates for nomination for the office of attorney general for a two-year term commencing on January 1, 1967. Spears had been elected to a four-year senate term in November of 1962, and Calhoun was elected in November, 1964. At issue was their eligibility to serve as attorney general under TEX. CONST. art. III, § 18 which provided in part:

> No Senator or Representative shall, during the term for which he may be elected, be eligible to any civil office of profit under this State, which shall have been created, or the emoluments of which may have been increased during such term....

Both relators were members of the legislature which raised the attorney general's salary. For this reason they were constitutionally ineligible to serve as attorney general during their legislative terms. The issue in *Spears* was when the relators' four-year terms began. The constitution at that time did not fix a definite time for the commencement of senators' terms. Davis argued that senators' terms began with the convening of the legislature in early January. If this were true, the relators' current senatorial terms would extend several days beyond the commencement of the attorney general's.

To complicate matters for the relators, a 1965 amendment to the Election Code required that a canvass of the returns of a legislative election would take place on the Monday before the second Tuesday in January following the election. At the time this amendment was enacted there was ample authority that an election was not complete until the returns had been canvassed. If the relators' terms commenced on this date, they would overlap with the term of the attorney general, and section 18 would make the relators ineligible for that office. The supreme court held that it could not have been the legislature's intention by this amendment to extend the senators' terms into January, and thus create an overlap and render them ineligible for the office of attorney general. *Id.* at 924. The court held that the amendment to the Election Code was clearly intended to operate prospectively. *Id.* Thus, it did not apply to the relators who were serving their senatorial terms when the amendment was enacted.

The court then addressed the relators' primary contention and held that a senatorial term begins on the day of the general election. *Id.* at 927. The court based its decision on the distinction between "term of office" and "tenure in office" and the fact that the constitution fixed representatives' terms "from the day of their election." TEX.CONST. art. III, § 4. The court reasoned that because the senate and the house are together styled "the legislature" by the constitution, senators' terms should begin on the same day as representatives' terms. Because there was thus no overlap between Spears' senate term and that of the attorney general, the court held that Spears was eligible for the office of attorney general.[4] *Id.* at 928.

---

3. The dissent illustrates how, under the circumstances of this case, the holdings in *Lee* and *Kirk* do not effectuate any conceivable purpose behind article III, section 19 of our constitution. We agree with this analysis. But as an intermediate court of appeals, we are not free to dismiss whatever precedent we happen to disagree with. Nor do we sit in an original mandamus proceeding as a court of equity. *Lee* and *Kirk* have not been overruled, and we do not have the authority to overrule them. Nor may we ignore them. They are directly in point and control our disposition of this mandamus proceeding.

We, like the dissent, feel much sympathy for the Republican voters of district 26 who will be deprived of the candidate they have chosen. But we serve the people of Texas, including those of district 26, much better by following the law and observing the constraints of our jurisdiction in each case we decide. Even in those cases in which we must reach a result we consider unfair.

4. After the *Spears* decision, the constitution was amended by the addition of the following sentence to clarify when senators' terms begin:

Although Calhoun was elected two years later than Spears, his term was subject to the apportionment clause, which effectively terminated his term on November 8, 1966. The court thus held that he too was eligible for the attorney general term commencing on January 1, 1967. *Id.* at 929.

Section 18 was amended subsequent to the *Spears* decision to add the following language:

> provided, however, the fact that the term of office of Senators and Representatives does not end precisely on the last day of December but extends a few days into January of the succeeding year *shall be considered as de minimus,* and the ineligibility herein created shall terminate on the last day in December of the last full calendar year of the term for which he was elected.

(emphasis added). It must be concluded that this amendment was necessary because of the prospective operation of the 1965 Election Code amendment. It was necessary to add the *de minimus* language to section 18 to ensure that the overlaps created by the 1965 amendment did not disqualify legislators as candidates for state office.

*Spears* is distinguishable because it is not an overlap case. The supreme court clearly concluded that the relators' senatorial terms ended before that of the attorney general began. *Spears* is cited to us, however, primarily for the principle that both the purpose of the constitutional provision and the intention of the legislature in passing any laws that might affect eligibility for office should be looked to in order to determine a candidate's eligibility to seek

and hold office. Wentworth contends that the 19–day overlap did not exist prior to 1983 when the legislature, in Senate Bill 194,[5] moved the end of the terms of various appointive offices, including that of Texas State University System regent,[6] from January 1 to February 1 of every odd-numbered year. Wentworth argues that the legislature's intent in passing Senate Bill 194 was only to prevent an outgoing governor, whose term expires in mid-January, from making a rash of "midnight" appointments prior to the incoming governor's taking office.[7] He asserts that it was not the intention of the legislature to render persons such as himself ineligible for office.[8] He also urges that the 19–day overlap is inconsequential and *de minimis.*

▇ We cannot agree that the overlap created by Senate Bill 194 is *de minimus* and does not affect eligibility to seek and hold legislative office merely because the legislature may not have intended to deny this eligibility to appointive officeholders such as Wentworth. The legislature's intention in its enactment of Senate Bill 194 is irrelevant to this proceeding. We must concern ourselves with the actual effect of the enactment, not with what the legislature may or may not have intended it to do. The legislature cannot by statutory enactment authorize what the constitution prohibits. *Maher v. Lasater,* 163 Tex. 356, 354 S.W.2d 923, 925 (1962). It is presumed that the legislature is familiar with the state constitution, *Spence v. Fenchler,* 107 Tex. 443, 180 S.W. 597, 605 (1915), and intended compliance with it, Tex.Gov't Code Ann. § 311.021(1) (Vernon 1988). "A

---

Senators shall take office following their election, on the day set by law for the convening of the Regular Session of the Legislature, and shall serve thereafter *for the full term of years* to which elected and until their successors shall have been elected and qualified. Tex.Const. art. III, § 3.

**5.** Act of May 28, 1983, 68th Leg., R.S., ch. 484, 1983 Tex.Gen.Laws 2827.

**6.** Tex.Educ.Code Ann. § 95.02 (Vernon 1991).

**7.** The operative section of the bill states that a governor who has not been re-elected may not

fill a vacancy in a state or district office "during the period beginning on the November 1 preceding the day of the general election ... and ending on the day the person elected governor at the election takes office...." Tex.Rev.Civ. Stat.Ann. art. 19a, § 2(a) (Vernon Supp.1992).

**8.** Wentworth has submitted affidavits from Speaker of the House Gibson D. Lewis and Senator Kent Caperton that state that the legislature's sole purpose in passing Senate Bill 194 was to end midnight appointments by lame-duck governors. They also state that no thought was given to the fact that the law might disqualify persons from legislative office.

statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it." *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990). We must presume that the legislature was well aware of section 19's application to legislative office seekers.[9]

Senate Bill 194 took effect June 19, 1983. Wentworth took office as regent in March, 1987. If we were to follow the reasoning in *Spears* in an attempt to hold that Senate Bill 194 has no application to Wentworth, we would be holding that it has no prospective application at all.[10] We would also be ignoring its express language, its plain effect (the creation of an overlap), and the express language of section 19 as interpreted by the supreme court.

The people of Texas have not passed an amendment to section 19 similar to the *de minimus* amendment to section 18. We cannot do it for them by holding that the overlap in this case is *de minimus. See Dawkins,* 825 S.W.2d at 450 ("the power to change such a [harsh] result by amending our constitution lies not in our hands, but in the hands of the sovereign people of the State of Texas.").

## II.

Wentworth next maintains that his eligibility for the office of senator has been established by the doctrines of res judicata and the law of the case. The legislature's authority under article III, section 8 is judicial in nature. *See* TEX.CONST. art. III, § 8, interpretative commentary. From this Wentworth argues that the legislature, having already seated him three times under the same facts that exist in this case, has established the law of the case and that his eligibility to hold office as a senator is established by res judicata. He argues

that the legislature's decision to seat him is "unassailable, is not subject to collateral attack, nor subject to judicial review."

■■■■ Each house of the legislature is the sole judge of the qualifications and election of its own members. TEX.CONST. art. III, § 8. *See also Kirk,* 376 S.W.2d at 562; *Burroughs v. Lyles,* 142 Tex. 704, 181 S.W.2d 570, 575 (1944). This court does not question the legislature's power in that regard, however, the legislature has devised procedures for keeping ineligible candidates off the ballot in the first place. *See, e.g.,* TEX.ELEC.CODE ANN. §§ 141.032, 145.-003 (Vernon 1986). Article III, section 8 does not prohibit the legislature from doing so. *Burroughs,* 181 S.W.2d at 575. The legislature may adopt all regulations reasonably necessary to avoid the futility of electing one who is not eligible to hold the office. *Id.* Further, the courts may review by mandamus the actions of persons upon whom duties are imposed by law in connection with the holding of an election or a party convention. *See, e.g., Sears v. Bayoud,* 786 S.W.2d 248, 249 (Tex.1990); *Kirk,* 376 S.W.2d at 562; *Burroughs,* 181 S.W.2d at 572. The legislature has specifically provided us with this authority. TEX. ELEC.CODE ANN. §§ 161.009 and 273.061 (Vernon 1986).[11]

■■■■ The doctrine of res judicata encompasses the separate judicial doctrines of merger, bar, and collateral estoppel. *Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 679 (Tex.1982). Res judicata bars retrial of claims that have been actually litigated and finally adjudicated in the original suit. *See Coalition of Cities for Affordable Util. Rates v. Public Util. Comm'n,* 798 S.W.2d 560, 562–63 (Tex.1990), *cert. denied sub nom., Gulf States Utils. Co. v. Coalition of Cities for Affordable Util. Rates,* ——

---

**9.** At the most, these officeholders would only have to wait to seek election to the first legislative term following the expiration of their appointive terms. It may well be that the legislature determined that this inconvenience was outweighed by its desire to prevent lame-duck governors from making a rash of midnight appointments.

**10.** A statute is presumed to operate prospectively unless it is expressly made retrospective. TEX.GOV'T CODE ANN. § 311.022 (Vernon 1988).

**11.** It is important to make clear that, contrary to Wentworth's assertion, we are not reviewing the house's action in seating him (or its inaction in not excluding him). The only issue before us is Meyer's decision to exclude Wentworth's name from the 1992 general election ballot.

U.S. ——, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991) (finally adjudicated); *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985) (actually litigated). It also bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been litigated in the prior suit. *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). "When a prior judgment is offered in a subsequent suit in which there is identity of parties, issues and subject matter, such judgment is treated as an absolute bar to retrial of claims pertaining to the same cause of action on the theory that they have merged into the judgment." *Id.*

Wentworth has shown us nothing to indicate that the house actually considered ("adjudicated") his eligibility to sit as a representative. We cannot presume from the state of the record that Wentworth's qualifications to hold office were ever reviewed by the house. The mere fact that Wentworth was allowed to take his seat does not raise the presumption that that matter was "actually litigated" in the house.[12] Res judicata's requirement of a final judgment presupposes that a trial has taken place. *See Coalition of Cities,* 798 S.W.2d at 563 ("All of the same parties participated vigorously in the initial contest with each presenting its own evidence and cross-examining its opponent's witnesses. Were this not true, imposition of *res judicata* principles would be inappropriate.").

Furthermore, there is no indication that Meyer has previously challenged Wentworth's eligibility before the house or before any other forum. Thus, the requirement of identity of parties is not met. The doctrine of res judicata does not apply.[13]

The doctrine of the law of the case is likewise inapplicable. The law of the case is established when a question of law is determined on appeal by a court of last resort. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986). The determination will govern a case in all subsequent stages, including retrial and subsequent appeal. *Id.; Dessommes v. Dessommes,* 543 S.W.2d 165, 169 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.). As with res judicata, the doctrine of the law of the case presupposes that the question of law has been fully and fairly litigated in a prior trial. There is no indication in the record that the issue of Wentworth's qualifications to sit as a legislator has been previously contested.

Wentworth argues that the facts establishing the overlapping terms were matters of public record which the house was presumed to know. He argues that with "full knowledge" of Meyer's position regarding his ineligibility, "the Legislature decided against the position espoused by the Respondent...." There is no indication, however, that Meyer has ever before challenged Wentworth's eligibility. Further, facts may exist establishing a cause of action in one's favor, but unless the matter is litigated, a final judgment that is res judicata can never be obtained.

Section 8 provides that *each* house is the judge of the qualifications of its members. Even if it can be said that the house has made a judicial determination that Wentworth is qualified to hold his seat as representative, the senate has not "adjudicated" Wentworth's eligibility to sit in that cham-

---

12. Adjudication of a legislator's qualifications is a judicial proceeding that must conform to procedural due process. *Barry v. United States,* 279 U.S. 597, 619, 49 S.Ct. 452, 457, 73 L.Ed. 867, 874 (1929).

13. For these same reasons Wentworth cannot rely on collateral estoppel. That doctrine "bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action." *Bonniwell,* 663 S.W.2d at 818.

A party seeking to invoke the doctrine of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.

*Id.* Wentworth cannot establish the application of collateral estoppel because he has not shown that the issue of his qualifications to be a legislator was previously raised by Meyer or was "fully and fairly litigated" in the house.

ber, and the house's determination will not bind the senate.

## III.

■ Finally, Wentworth contends that Meyer has abused his discretion because Wentworth's ineligibility is not conclusively established in the public record. Meyer, as Republican Party Chairman, may declare a candidate ineligible before the 30th day preceding the general election if "facts indicating that the candidate is ineligible are conclusively established by another public record." TEX.ELEC.CODE ANN. §§ 145.003(b) and 145.003(f)(2) (Vernon 1986). *See also Sears,* 786 S.W.2d at 253–54.

Wentworth has submitted several exhibits chronicling his appointment and confirmation as regent, his resignation, the nomination of George William Worth as his successor, the senate's rejection of Worth's nomination a year later, and the nomination and confirmation of Clyde Waddell, Jr. to the board of regents.

Wentworth places particular emphasis on the report of the senate committee on nominations confirming Waddell as "filling [the] unexpired term of Mr. George Worth." From this he argues that because the senate record shows that it was Worth's rather than Wentworth's unexpired term that was being filled, Wentworth's ineligibility was not "conclusively established" by the public record.

On the contrary, the public record of Wentworth's nomination is a letter by then-governor William P. Clements to the senate nominating him "TO BE A MEMBER OF THE TEXAS STATE UNIVERSITY SYSTEM BOARD OF REGENTS FOR A TERM TO EXPIRE 2–1–93." The public record establishes that the senate confirmed his nomination. It is public record that the next senate will convene in regular session on January 12, 1993, the second Tuesday in January. The constitution provides that senators take office on the convening of the regular session of the legislature following their election. TEX.CONST. art. III, § 3. The public record thus conclusively establishes that the regent's term to which Wentworth was appointed over-laps by 19 days the senate term he seeks. Wentworth does not contest these facts.

It makes no difference whether Wentworth has had one, two, or several successors in office. The issue is not who or how many succeed him, but whether the public record conclusively establishes that his board of regents term will overlap the legislative term sought. Under section 19, as interpreted by the supreme court, nothing Wentworth has done or can do, including his resignation four years earlier, will avoid section 19's prohibition against overlapping terms. *Lee,* 377 S.W.2d at 620. Because the public record conclusively establishes Wentworth's ineligibility, Meyer did not abuse his discretion in removing his name from the general election ballot. Meyer may not ignore facts establishing the ineligibility of a candidate; he properly declared Wentworth ineligible. *See Sears,* 786 S.W.2d at 254.

The result in this case is harsh and unfair to Wentworth and to those appointive officeholders similarly situated. We are loath to hold that a candidate chosen by the voters of his party is ineligible to seek and hold political office. But unless section 19 is amended, or until the supreme court alters its interpretation of that provision, we are bound by the unequivocal holding of *Lee* that the constitution bars officeholders from seeking election to the legislature until the expiration of their term of office, even if they have resigned. It is unfortunate that the Republican voters of district 26, without their knowledge and through no fault of their own, chose an ineligible candidate. But the issue in this case is not whether they can select the candidate of their choice. Clearly they have that power. Rather, the issue is whether Wentworth is eligible to be that candidate. Clearly, under binding precedent, he is not.

The petition for writ of mandamus is denied.

CHAPA, Justice, concurring.

My opinion dated June 26, 1992, is withdrawn and the following opinion is substituted therefor.

I endorse the majority opinion, and respectfully disagree with the dissent.

The dissent is based primarily on the novel invoking of equity in a mandamus proceeding, the premise that *Lee v. Daniels*, 377 S.W.2d 618 (Tex.1964), should be either overruled or ignored by this court, and that article III, section 19, of the Texas Constitution should not apply to this relator for equitable reasons.

This court has no authority to overrule or disregard the Texas Supreme Court decision of *Lee*, especially in view of the fact that the same court recently cited the case without disapproval in *Dawkins v. Meyer*, 825 S.W.2d 444, 448 (Tex.1992).

If equity dictates that article III, section 19, of the Texas Constitution should not apply to this relator, then who would it apply to? Further, how many other provisions of the Texas Constitution would equity likewise declare ineffective on this same basis?

Moreover, although we are undoubtedly sympathetic to the desires of the republican voters of this senatorial district, as well as the equitable arguments raised by the relator and the dissenting opinion, this is a mandamus proceeding which, in addition to being extremely restrictive, is not equitable in nature.

Generally, "[m]andamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law" and "[t]he court of appeals, therefore, acts in excess of its writ power when it grants mandamus relief absent these circumstances." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985).

The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the respondent's action. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–43 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984). Rather, a respondent abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Downer*, 701 S.W.2d at 241–43; *Cessna Aircraft Co.*, 665 S.W.2d at 443; *Bush v. Vela*, 535 S.W.2d 803, 805 (Tex.Civ.App.—Corpus Christi 1976, no writ); *King v. Guerra*, 1 S.W.2d 373, 376 (Tex.Civ.App.—San Antonio 1927, writ ref'd).

In ascertaining whether the respondent abused its discretion, the reviewing court must determine if the respondent acted without reference to any guiding rules and principles. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986). In a mandamus action, "[t]he relator who attacks the ruling of the [respondent] as an abuse of discretion labors under a heavy burden to establish under the circumstances of the case, that the fact and law permit the [respondent] to make but one decision." *Blasingame v. Krueger*, 800 S.W.2d 391, 393 (Tex.App.—Houston [14th Dist.] 1990, no writ), citing *Johnson*, 700 S.W.2d at 917. This standard of review applies in mandamus proceedings involving election officer. *See Walker v. Packer*, 827 S.W.2d 833 (Tex.1992); *Oney v. Ammerman*, 458 S.W.2d 54 (Tex.1970); Tex.Elec.Code Ann. §§ 161.009 and 273.061 (Vernon 1986).

Regardless of our own personal individual or collective feelings, mandamus cannot issue when the relator has failed to establish his burden.[1] This respondent cannot be said to have abused his discretion in failing to perform his duty imposed by law when the record clearly reflects that the respondent followed the letter of the law as presently interpreted by the Texas Supreme Court.

Mandamus should be denied.

BIERY, Justice, dissenting.

The dissenting opinion of June 26, 1992, is withdrawn and the following is substituted.

While finding no fault with the traditional legal analysis employed by the majority,

---

1. The relator has the burden of presenting a record clearly showing the respondent's abuse of discretion or violation of a duty imposed by law. Tex.R.App.P. 50(d).

there are rare instances where common sense and fundamental philosophical principles of constitutional self-government require the judiciary to steer a corrective course around mistakes in the law. This, I submit, is one of those cases. Were we absolute slaves to *stare decisis,* for example, *Plessy v. Ferguson,* 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896) would still be the law and our society would still suffer the hypocrisy of racial segregation notwithstanding lofty words such as "equal protection" and "certain inalienable rights...." To those inalienable rights articulated by Mr. Jefferson, I would humbly add the right of the majority of the people to elect the representative of their choice. The evolution of western democracies, from the Magna Carta to the present, has embraced the concept of including more people, not fewer, in the process of participatory democracy. The result reached in this case today, based on the erroneous and overly technical reasoning and application of *Lee v. Daniels* and *Dawkins v. Meyer,*[1] runs counter to the tide of western political history,[2] effectively emasculates the right of the people of district 26 to elect the senator of their choice and excludes hundreds of citizens from being eligible to serve as elected representatives. I would follow the language of the Texas Supreme Court in *Spears v. Davis;* for these reasons and those stated below, I respectfully dissent.

It is appropriate to observe what this case is not: a partisan political dispute. In an interesting "strange bedfellows" twist, the Republican Party is allied with the Democratic nominee in seeking to keep Republican Wentworth off the ballot. On the other hand, the State Democratic Party, as an intervenor, has agreed with at least some of Mr. Wentworth's arguments. To the extent that *Dawkins v. Meyer* is even applicable and therefore problematical for Republican Wentworth, the *Dawkins* majority consisted of four Republicans and one Democrat; four other Democratic justices dissented with opinions which would keep Mr. Wentworth on the ballot. Democratic legislative leaders Gib Lewis and Kent Caperton have filed affidavits in support of Republican Wentworth's legal argument. Finally, this case affects not only these parties but also hundreds of appointees of the present Democratic governor.

In addition to the factual background set out in the majority, I would emphasize the term of the legislative office Wentworth seeks will commence on January 12, 1993. Thus, an overlap of 19 days out of the 2192 days of the regent's term of office is alleged to create ineligibility. Wentworth resigned his position as regent on May 10, 1988 to take office as a state representative.[3] The resignation from the regent position was *almost five years* before the senate term which Wentworth now seeks.

Wentworth raises three arguments: he is not constitutionally ineligible to stand as a candidate for state senator, the public record on which Meyer bases his discretionary decision does not *conclusively* show that Wentworth is ineligible as required by law, and Meyer has no power to declare him ineligible because the legislature has already ruled that he is qualified. I find merit in the first two contentions, and will address only those arguments in this opinion.

*Spears v. Davis,* 398 S.W.2d 921 (Tex. 1966), is cited to us for the principle that both the purpose of the constitutional provision and the intention of the legislature in passing any laws that might affect eligibility for office should be looked to in order to determine a candidate's eligibility to seek and hold office. In other words, there should be deference to the spirit of the law and not only blind obedience to its letter. *Spears* has never been overruled and the affidavits of Speaker Lewis and Senator

---

1. An analysis can be made that the arguments and issues raised in *Lee* and *Dawkins* differ from those presently before us and, therefore, *Lee* and *Dawkins* are not necessarily binding.

2. Were they to know of the result in this case, philosophers such as Locke, Montesquieu, Rousseau and Mill would wonder why we have taken this step backward.

3. Interestingly, the Republican Party did not challenge Wentworth's eligibility to run for state representative in 1988 or in 1990, although the same issue could have been raised.

Caperton give guidance as to legislative intent.

The principle that the constitution should be interpreted to effectuate its purpose is central to the *Spears* court's interpretation of section 18 and should guide any reasoned interpretation of section 19. The *Spears* court quoted the Utah supreme court:

[W]henever there is even a remote possibility that the evil [the constitutional provision] was designed to prevent might exist, it should be applied in such manner as to accomplish its objective. *However, when adequate safeguards in that respect are observed, there appears to be no good reason to carry this provision beyond that purpose and make an unreasoning application of it where no such evil, nor any possibility of it exists. This would work injustice by depriving citizens of their basic rights and would also tend to disrupt the orderly processes of democratic government.*

398 S.W.2d at 929, *quoting, Shields v. Toronto,* 16 Utah 2d 61, 395 P.2d 829 (1964) (emphasis added).

Section 19 is one of the several constitutional provisions prohibiting dual officeholding. TEX.CONST. art. XVI, §§ 12, 33, 40. *See* 1 GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 135 (1977) and 2 BRADEN 731–32. Section 19's historical antecedents date to a 1701 act of Parliament prohibiting persons having an office, place of profit, or pension from the king from serving as members of the House of Commons. TEX.CONST. art. III, § 19, interpretive commentary. *See also Dawkins,* 825 S.W.2d at 448. The federal constitution contains a similar prohibition, which prevents any person holding office under the United States from being a member of either house of congress, but only "during his continuance in office." U.S. CONST. art. I, § 6, cl. 2.

The Republican voters of district 26 have chosen Wentworth as their nominee for the state senate. He resigned his office as regent *four years* ago. His successor in that office has been confirmed and is now serving. There is absolutely no possibility that the dual officeholding evil section 19 was designed to prevent will be realized in this case. Section 19's prohibition of dual officeholding is not in any way jeopardized by a candidate who resigns his office several years before running for the legislature. In such a situation there is no possibility of deceiving the voters; there is no question of which office the candidate intends to hold. There also could be no misuse or neglect of the appointive office during the campaign or the possibility of undue influence by the executive on the legislative branch where the appointee has resigned several years before and a replacement has been appointed, confirmed, and is serving.

It might be argued that the purpose of section 19 is to encourage all appointive officeholders to serve their full terms. The realization of that goal will provide continuity in governmental boards and agencies, but that goal is not advanced by the holding in *Lee.* Appointive office is not involuntary servitude. There is no law that prohibits an officeholder from resigning his or her post. One's intention to serve a full term is best explored by the governor and the senate in the nomination and confirmation processes, and not an inducement that should be creatively read into the constitution where there is no evidence the people intended such an interpretation.

Further, there are many reasons one might resign a political office. Setting aside personal reasons, one might resign to accept another appointive post. Or to run for county office, or municipal office, or for governor, or attorney general, or any other statewide office. Or to run for Congress, or President of the United States. Indeed, one can resign to run for any office *except* the Texas Legislature. Thus, if the justification for the *Lee* gloss on section 19 is that an appointive officeholder may devote more time to a legislative campaign than the duties of his current office, there is no explanation why section 19 does not prohibit an officeholder from seeking all other political offices. And of course, even this justification evaporates when an appointive

officeholder resigns several years prior to beginning a campaign. At that point his "term" is at an end.[4]

I am at a loss to see how the prohibition against seeking only one political office would ensure that appointees would serve out their terms, or keep them devoted to their duties, or would further any other possible purpose behind the enactment of section 19. Is it in the State's interest to ensure that officeholders who no longer are motivated to hold their office serve out their terms? I think not.

To illustrate the absurdity of this proposition, let us assume that Jones is appointed and confirmed as regent for a six-year term beginning on February 1, 1993. Jones, after serving one day as regent, feels compelled due to a wholly personal reason to resign his office. His successor shortly thereafter is confirmed and begins to serve. Jones is still barred, however, under the strict interpretation of *Lee*, from serving in the legislature until 2001. And not only that, his successor is likewise barred, even if he resigned the day after his own confirmation. On the other hand, Jones, even without resigning, is not prohibited by section 19 from launching a campaign the day he takes office for city council or President of the United States.

Thus it can plainly be seen that the desire that appointed officeholders serve out their terms is not furthered by the interpretation that resignation will not revive one's eligibility for legislative office. The *Lee* gloss on section 19 is nothing more than an impermissible means of protecting legislative seats from outside competition. *See Clements v. Fashing*, 457 U.S. 957, 979, 102 S.Ct. 2836, 2852, 73 L.Ed.2d 508 (1982) (Brennan, J., dissenting). It reduces the pool of possible legislators by eliminating, at least temporarily, hundreds of qualified, public-spirited, citizens. I do not believe the people or their elected representatives intended such an illogical result or applica-

tion of section 19, nor intended for incumbent legislators to be protected by a different set of rules.

Nor would the doctrine of separation of powers be in jeopardy. This is cited in *Dawkins* as a further purpose of section 19. 825 S.W.2d at 448. Any appointive officeholder is admittedly free to run for the legislature in the election immediately following the expiration of his term of office. It would strain credulity to argue that the 19–day overlap created by the enactment of Senate Bill 194 (the "midnight appointment" law) guarantees the elimination of any undue influence by the executive upon the legislative branch. The result is especially ludicrous when no overlap at all would have existed, and had not existed, but for the enactment of Senate Bill 194, which admittedly had a different purpose altogether. Interestingly, the State Democratic Executive Committee, which we permitted to intervene in this proceeding, joins Wentworth in this argument.

The law is clear that any constitutional or statutory provision restricting the right to hold public office must be strictly construed *in favor of eligibility. Dawkins*, 825 S.W.2d at 448. *Spears*, which has never been overruled, teaches us that any legislative enactment affecting eligibility for office must be examined for legislative intent. The affidavits of Speaker Lewis and Senator Caperton make it clear that the legislature had no intention, and did not even consider, denying eligibility to the legislature to a whole class of appointive officeholders. Because the overlap created by Senate Bill 194 in no way subverts any possible purpose of section 19, and because it was not intended by the legislature to deprive Wentworth and other appointive officeholders of an opportunity to seek legislative office, it should be inapplicable in cases, such as this one, where the candidate has resigned his office several years

---

4. It is also clear that the people have abandoned any interest in short term overlaps which would result in ineligibility by amending art. III, § 18 to provide that such short term overlaps is *de minimis*.

While it is true that § 19 was not similarly amended, I fail to see how there can be one set of favorable rules for incumbent legislators under § 18 and other less favorable rules for everyone else under § 19 without violating basic concepts of fairness and equal protection.

prior to applying for a place on the ballot. To hold that the people cannot vote for Wentworth to serve them as their state senator because the term of the office to which he was appointed overlaps his senate term by 19 days, notwithstanding his resignation from the appointive office four years ago, is an absurd and ridiculous result with no foundation in logic, in legislative intent, or constitutional purpose.

Wentworth also contends that Meyer has abused his discretion because Wentworth's ineligibility is not conclusively established in the public record. The Election Code provides that a candidate may be declared ineligible if the ineligibility is established by the information on his or her application for a place on the ballot, or if "facts indicating that the candidate is ineligible are *conclusively established* by another public record." TEX.ELEC.CODE ANN. § 145.003 (Vernon 1986) (emphasis added).

Wentworth has brought forward several exhibits chronicling his appointment and confirmation as regent, his resignation, the nomination of George William Worth as his successor, the senate's rejection of Worth's nomination a year later, and the nomination and confirmation of Clyde Waddell, Jr. to the board of regents.[5]

Wentworth places particular emphasis on the report of the senate committee on nominations confirming Waddell as "filling [the] unexpired term of Mr. George Worth." From this he argues that because the senate record shows that it was Worth's rather than Wentworth's unexpired term that was being filled, Wentworth's ineligibility was not "conclusively established" by the public record. I agree.

As Justice Steakley pointed out in *Lee*, I am unable to see how ineligibility pertaining to offices in the general class to which Section 19 applies, i.e., holders of lucrative offices, can exist in the absence of an *actual holding* of the office. The *sine qua non* of ineligibility pertaining to this class is the holding of the office. *If a person is not holding a lucrative*

*office at the time in question, how can Section 19 apply?*

*Lee*, 377 S.W.2d at 621 (Steakley, J., dissenting). (emphasis added). Justice Steakley distinguished the type of prospective resignation involved in *Kirk*, where the district attorney submitted a resignation to become effective before the general election, and the irrevocable resignation by the respondent in *Lee*.

> [I]n the case at bar the respondent resigned from his office as County Commissioner prior to his application for a place on the official ballot as a candidate for the Legislature; his resignation was forthwith accepted by the Commissioners Court and his successor immediately qualified and assumed the duties of the office.

*Id.*, at 622 (Steakley, J., dissenting). Thus, a reasonable argument can be made that section 19 has no application in this case and, therefore, the public record on which Meyer based his decision is not conclusive. Further, if the public record were conclusive, the Republican Party should have declared Wentworth ineligible in 1988 and 1990 when he ran for state representative, or at least when he sought to file for the senate, rather then lay behind the log and ambush Wentworth and the voters after the campaign, the primary, and the run-off. This was not done, I suggest, because the public record is *not* conclusive and Meyer should be estopped from keeping the people from voting for Wentworth at this late date.

I respectfully urge the supreme court to reconsider *Lee v. Daniels*, 377 S.W.2d 618 (Tex.1964), which held that the office seeker is ineligible during the original term, even if he has resigned. In *Dawkins v. Meyer*, 825 S.W.2d 444, 446 n. 3 (Tex.1992), the court said in footnote three that the effect of Dawkins' resignation was not argued and was therefore not before the court; the court could easily have cited *Lee* instead of sidestepping the resignation issue. Incredibly, under *Lee*, a former federal judge would be forever ineligible for the

---

**5.** As a further illustration of the absurdity of position taken by Meyer, in the present case it is not only Wentworth who is barred from the legislature, but also Waddell and presumably Worth, who was not confirmed, but who served as an interim appointee for a year.

legislature because his lifetime appointment, long since abandoned, was the term for which he was appointed.

*Lee* does not serve any valid interests in this case. Clearly, a former regent who resigned his term four years before filing for the present office does not threaten executive influence over the legislature, which seems to be a principal purpose of the constitutional provision. *See Dawkins v. Meyer*, 825 S.W.2d at 449. Perhaps one might defend article III, § 19 by arguing that a holder of a lucrative office has greater power than ordinary office seekers and should not be allowed to run for the legislature during his term. In addition, one might defend § 19 on the ground that those presently holding lucrative office would be distracted from their duties if they could seek legislative office during their terms. But those policy justifications for § 19 do not apply when, as here, the office seeker resigned the lucrative office long before filing for the legislature.

When Wentworth resigned four years ago and his successor was nominated and confirmed, Wentworth's "term" was at an end. At the very least it must be said that the public record is unclear on this point, and not conclusive as required by the Election Code. Meyer abused his discretion under section 145.003(f) of the Election Code by removing Wentworth's name from the ballot. For this reason also, mandamus should issue.

Accordingly, I would grant the writ.