**Earl Bruce ROLAND, Appellant,**

v.

**The STATE of Texas, State.**

No. 02–96–282–CV.

Court of Appeals of Texas,
Fort Worth.

July 24, 1997.

Rehearing Overruled Aug. 28, 1997.

David A. Pearson, IV, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, David M. Curl, Tim Bednarz, Assistant Criminal District Attorney, Fort Worth, for Appellee.

## OPINION

HOLMAN, Justice.

## BACKGROUND FACTS

Appellant Earl Bruce Roland was found not guilty of attempted murder by reason of insanity. He was committed to Vernon State Hospital for in-patient treatment.[1] On June 16, 1994, he was committed for extended in-patient care to Vernon State Hospital following a jury trial on the State's Application for Extended Mental Health Services. On June 13, 1995, the trial court renewed the order.

On May 17, 1996, a social worker at Wichita Falls State Hospital ("WFSH") filed an application for renewal of the 1995 order. Dr. Cannon examined Appellant on June 12, 1996. She filed her report on June 17, 1996. The record does not reflect that the State filed a motion for a hearing. On July 29, 1996, the trial court held a hearing, presumably on its own motion. On July 31, 1996, the trial judge signed a Renewal of Order for Extended Mental Health Services.

All proceedings took place in Criminal District Court No. 3 for Tarrant County. Appellant has been in custody since 1988.

---

1. *See* TEX.CODE CRIM. PROC. ANN. art. 46.03, § 4(b),

## DECISION

In three points of error, Appellant challenges the lawfulness and constitutionality of the 1996 renewal order and the factual and legal sufficiency of the evidence to support his involuntary commitment. Because we find that Appellant was denied due process of law when his confinement was unlawfully extended after the expiration of the 1995 commitment order, we reverse the order of the trial court without addressing Appellant's sufficiency points of error.

## THE LAW

Article 46.03, subsection 4(d)(5) of the Texas Code of Criminal Procedure provides:

(5) Judicial Release. A person acquitted by reason of insanity and committed to a mental hospital or other appropriate facility pursuant to Subdivision (3) of this subsection may only be discharged by order of the committing court in accordance with the procedures specified in this subsection. If at any time prior to the expiration of a commitment order the superintendent of the facility to which the acquitted person is committed determines that the person has recovered from his mental condition to such an extent that he no longer meets the criteria for involuntary commitment or that he continues to meet those criteria but that treatment or care can be provided on an out-patient basis provided he participates in a prescribed regimen of medical, psychiatric, or psychological care and treatment, the director of the facility shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. If the superintendent of the facility intends to recommend release, out-patient care, or continued in-patient care upon the expiration of a commitment order, the superintendent shall file a certificate to that effect with the clerk of the court that ordered the commitment at least 14 days prior to the expiration of that order. The clerk shall notify the district or county attorney upon receipt of such certificate. Upon receipt of such certificate or upon the expiration of a com-

---

(d)(1), (2), (3) (Vernon 1979 & Supp.1997).

mitment order, the court shall order the discharge of the acquitted person or on the motion of the district or county attorney or on its own motion shall hold a hearing, prior to the expiration of the commitment order, conducted pursuant to the provisions of the Mental Health Code or the Mentally Retarded Person's Act as appropriate, to determine if the acquitted person continues to meet the criteria for involuntary commitment and whether an order should be issued requiring the person to participate in a prescribed regimen of medical, psychiatric, or psychological care or treatment on an out-patient basis as provided in Subdivision (4) of this subsection. If the court determines that the acquitted person continues to meet the criteria for involuntary commitment and that out-patient supervision is not appropriate, the court shall order that the person be returned to a mental hospital or other appropriate in-patient or residential facility. If the court finds that continued in-patient or residential care is required, the commitment will continue until the expiration of the original order, if one is still in effect, or the court shall issue a new commitment order of an appropriate duration as specified in the Mental Health Code or the Mentally Retarded Person's Act. If a hearing on a request for discharge or out-patient supervision has been held prior to the expiration of a commitment order, the court is not required to act on a subsequent request except upon the expiration of a commitment order or upon the expiration of 90 days following a hearing on a previous request. Commitment orders subsequent to an initial commitment order issued under this subsection shall be of an appropriate duration as specified in the Mental Health Code or the Mentally Retarded Person's Act, whichever is applicable.[2]

## STATUTORY ANALYSIS

On its face, the statute provides that the superintendent of the facility to which the defendant has been committed, WFSH in the case before us, may file a certificate recommending release, out-patient care, or continued in-patient treatment at any time prior to the expiration of the commitment order. If the superintendent intends to recommend release, out-patient care, or continued in-patient care when the commitment order expires, the superintendent must file with the said court a certificate to that effect at least 14 days before expiration of the order.[3] An application for renewal was filed on May 17, 1996, asking that the court renew the order for in-patient treatment that would expire June 13, 1996. The application was sworn by a social worker at WFSH. Two certificates of mental examination were filed by doctors at WFSH.

By the clear terms of the statute, "[u]pon receipt of such certificate [requesting release] or upon the expiration of a commitment order, *the court shall order the discharge of the acquitted person.*"[4] The statute creates an exception to this mandate and provides that the court,

on the motion of the district or county attorney or on its own motion shall hold a hearing, *prior to the expiration of the commitment order,* conducted pursuant to the provisions of the Mental Health Code or the Mentally Retarded Person's Act as appropriate, to determine if the acquitted person continues to meet the criteria for involuntary commitment and whether an order should be issued requiring the person to participate in a prescribed regimen of medical, psychiatric, or psychological care or treatment on an out-patient basis. . . .[5]

The statute allows a trial court to select only *one* of two options:

(1) order the patient's discharge when the commitment order expires; or

(2) hold a hearing before the commitment order expires to determine if a renewal

---

2. *Id.* art. 46.03, § 4(d)(5).

3. *See id.*

4. *Id.* (emphasis added).

5. *Id.* (emphasis added).

order should be issued.[6]

The first option is clear and in no way suggests that a person can be retained in custody after the order expires. The trial court did not select the first option.

■ Had the trial court acted sooner, it could have chosen the second option. But because this second option *mandates* that the hearing be held before the expiration of the commitment order, it does not afford the trial court any rationale upon which to conduct a hearing after the order has expired. By not holding a timely hearing, the trial court failed to comply with the mandatory requisites of the second option.

## STATUTORY CONSTRUCTION

The State contends that six words from the text of subsection 5 override the mandate of the rest of the statute and the provisions of the Texas Mental Health Code. The gist of the State's contention is that because subsection 5 once references a prior commitment order with the words "if one is still in effect," the Legislature (1) has anticipated that a gap may exist between a commitment order's expiration and the time of hearing an application for re-commitment and (2) has impliedly given the Legislature's permission for the gap to be indefinite.

That interpretation would leave the trial court free to wait for some indeterminate time after the order has expired before even giving a patient a hearing to evaluate the possible need for further in-patient treatment, and while the patient languishes in unlawful custody that violates the provisions of both subsection 5 of article 46.03, section 4(d) of the Texas Code of Criminal Procedure[7] and the Health & Safety Code.[8] Adoption of that reasoning by the courts would render commitment orders and constitutional

rights irrelevant because it would leave a patient's custody after the expiration of a commitment order entirely up to the whim and caprice of a hospital, a state prosecutor, and a trial court.

Reading the phrase "if one is still in effect" in context of the entire statute,[9] its meaning is clear. If the superintendent of the facility recommends release or out-patient care, and the superintendent files the certificate with the intention that the order to release take effect before the commitment order expires, and the trial court, after hearing, disagrees with the superintendent's recommendation, the existing commitment order continues until its original expiration date.[10] If, however, the superintendent intends the release, transfer, or extension of in-patient commitment to take effect upon the expiration of the existing order, the superintendent must file the certificate at least 14 days before the commitment order expires so that a hearing may be held before the expiration date.[11] If the court finds continued in-patient or residential care is required, the court *must* enter a new commitment order.[12]

Additionally, the phrase may be reasonably interpreted to mean that the Legislature contemplated a situation where the hearing would not be held until the same day the old order would expire, thereby necessitating a new order if continuing the commitment of the patient is found to be justified.

These interpretations of subsection 5 are compatible with the constitutional right of due process. But the deprivation of a patient's liberty without a valid commitment order is a denial of the patient's constitutional right to due process of law under both the Texas and United States Constitutions.[13] The State asks us to interpret six words of subsection 5 in a manner that enables the statute to override a patient's constitutional

---

6. *See id.* Additionally, the subsection 5 hearing (the second option) is triggered only when the question of whether the patient still meets the criteria for continued involuntary commitment is brought before the court.

7. *Id.*

8. *See* Tex. Health & Safety Code Ann. § 574.008(a) (Vernon 1992 & Supp.1997)

9. Tex.Code Crim Proc Ann. art. 46.03, § 4(d).

10. *See id.* § 4(d)(5).

11. *See id.*

12. *See id.*

13. *See Ex parte Meade,* 550 S.W.2d 679, 681 (Tex.Crim.App.1977).

rights. And the State's argument provides no answer to a significant question: How long should the State be allowed to hold a person after expiration of a commitment order before requiring that the trial court hold a hearing to release the person? Thirty days? Six months? One year? Indefinitely?

The Legislature cannot by statutory enactment authorize what the constitution prohibits.[14] We must presume that the Legislature was familiar with the constitutional right to due process of law when it enacted subsection 5 and that the Legislature intended that subsection 5 would be enforced in a manner that would comply with, not thwart, constitutional rights.[15]

Making laws is the Legislature's function; interpreting those laws is a task of the judiciary.[16] We begin all statutory interpretation with the premise that the Legislature would not intend its statute to impose an absurd result.[17]

We must try to give effect to what the Legislature intended when it enacted the statute.[18] Because the literal text of a statute is the only definitive evidence of what the Legislature intended by enacting the statute, we normally must enforce the statute's "plain meaning" if its words are clear and unambiguous.[19] But if application of the "plain meaning rule" would work an absurd result, a consequence that the Legislature could not possibly have intended, then we should not enforce the statute literally, but should look beyond the bare text for a proper interpretation.[20]

In this case, the object of our analysis is article 46.03, subsection 4(d)(5) of the Texas Code of Criminal Procedure.[21] And although it is a component of the criminal jurisprudence of this state, the text of subsection 5 expressly integrates procedures from a civil code, the Texas Health and Safety Code.

Just as with criminal jurisprudence, our interpretation of a civil statute must try to give effect to what the Legislature intended by its enactment.[22] Subsection 5 is within the Code of Criminal Procedure, and the Code Construction Act applies to it.[23] The Code Construction Act requires that we presume that in enacting subsection 5, the Legislature intended the provisions of subsection 5 to comply with the state and federal constitutions.[24]

The Legislature's intent when it used the words "if one is still in effect" in subsection 5 was surely not to negate the due process clause of the United States and Texas Constitutions or to negate subsection 5's own clear mandate to release the patient immediately when the commitment order expires. To find that the Legislature intended to make subsection 5 superior to the constitutional right of due process or to cancel the right of a mandatory release already granted within the same subsection would work an absurd result, a consequence that the Legislature could not possibly have intended.

It is more reasonable to interpret subsection 5 as meaning that once the commitment order expires, the trial court must immediately order the acquitted mental patient discharged than it is to run the words, "if one is still in effect," through an interpretive strainer that authorizes hospitals, prosecutors, and

14. *See Wentworth v. Meyer,* 837 S.W.2d 148, 154 (Tex.App.—San Antonio 1992 orig. proceeding), *mandamus conditionally granted,* 839 S.W.2d 766 (Tex.1992).

15. *See id.* at 155.

16. *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

17. *See id.*

18. *See id.*

19. *See id.*

20. *See id.; see also Camacho v. State,* 765 S.W.2d 431, 433 (Tex.Crim.App.1989).

21. TEX.CODE OF CRIM. PROC. ANN. art. 46.03, § 4(d)(5).

22. *See Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997); *Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.,* 917 S.W.2d 19, 21 (Tex.1996).

23. *See* TEX. GOVT.CODE ANN. § 311.002 (Vernon 1988).

24. *See id.* § 311.021(1).

courts to ignore the state and federal constitutions.

## MOOTNESS ARGUMENT

■ The State seems to suggest that even if the order had expired, either the trial court could hold a civil commitment hearing and enter a new order instead of attempting to extend an order that no longer existed, or, by holding the hearing, the trial court somehow resurrected its former jurisdiction. Consequently, the State argues, Appellant's complaint is implicably rendered moot by the subsequent hearing. The State relies on *Ex parte Nelson,*[25] but that reliance is misplaced. *Nelson* deals with a parolee challenging revocation of his parole. That challenge was rendered moot by his being again released on parole, not by his being deprived of his liberty.[26] Nelson got the relief he requested in his habeas proceeding. Roland requests release, not recommitment.

## JURISDICTION

■ If the State is arguing, as does the dissent, that on the facts of this case the trial court may confine appellant "under civil commitment proceedings,"[27] the State's position is untenable. Criminal District Court No. 3 of Tarrant County generally has no jurisdiction over civil mental commitments when no criminal case is pending and when it no longer has jurisdiction over a person found not guilty by reason of insanity. Section 574.008(a) of the Health & Safety Code provides, "[a] proceeding under Subchapter C or E *must be held in the statutory or constitutional county court that has the jurisdiction*

of a probate court in mental illness matters."[28] Subchapters C and E deal with civil proceedings for court ordered mental health services and post-commitment proceedings, respectively.

In Tarrant County, Probate Courts 1 and 2 have exclusive jurisdiction to hear civil commitment trials.[29] Criminal District Court No. 3 has exclusively criminal jurisdiction.[30] It has neither civil nor probate jurisdiction.[31] Criminal District Court No. 3, therefore, has only derivative mental health jurisdiction and cannot lawfully hear an original petition for involuntary hospitalization. Its derivative mental health jurisdiction, its subject matter jurisdiction of this case, expired when the commitment order expired on June 13, 1996. Forty-six days later, no order existed which could lawfully be extended or renewed. The law is well-settled:

> Jurisdiction of the subject matter cannot be conferred by agreement; this type of jurisdiction exists by reason of the authority vested in the court by the Constitution and statutes.[32]

In a criminal case, a valid indictment, or information if there is an affirmative waiver of indictment, is essential to the district court's jurisdiction.[33] In contrast to civil cases, where personal jurisdiction over a party may be had merely by that party's appearance before the court, in criminal cases, personal jurisdiction "cannot be conferred upon the district court solely by the accused's appearance, but requires the due return of a felony indictment, or the accused's personal

---

25. 815 S.W.2d 737, 738–39 (Tex.Crim.App.1991).

26. *See id.*

27. Dissent, op. at 178.

28. Tex. Health & Safety Code Ann. § 574.008(a) (emphasis added).

29. *See id.* (mandating that a subchapter C or E proceeding be held in the statutory or constitutional county court having jurisdiction of probate court); Tex Gov't Code § 25.2221(c) (Vernon 1988) (declaring that Tarrant County has two statutory probate courts, Probate Courts No. 1 and No. 2); Tex. Gov't Code § 25.2224(a) (Vernon 1988) (declaring that Tarrant County statutory probate courts have general jurisdiction of pro-

bate court); Tex. Gov't Code § 25.0021 (Vernon 1988) (describing the general jurisdiction of probate courts); Tex. Prob Code Ann. § 5(c) (Vernon 1980 & Supp.1997) (according probate jurisdiction to statutory probate courts and constitutional county courts).

30. *See* Tex. Gov't Code §§ 24.912, 24.910(b), (c) (Vernon 1988).

31. *See id.*

32. *Garcia v. Dial,* 596 S.W.2d 524, 527 (Tex. Crim.App. [Panel Op.] 1980); *see also* cases cited therein.

33. *See Garcia,* 596 S.W.2d at 527.

affirmative waiver thereof and the return of a valid felony information upon complaint."[34]

Jurisdiction gives a district court power to determine all essential questions and to engage in all acts authorized by the Constitutions statutes and common law.[35] As the Court of Criminal Appeals has made clear, "[a] court's having possession and jurisdiction of a case, that *jurisdiction embraces everything in the case* and *every question arising* which can be determined in the case, until it reaches its termination and the jurisdiction is thereby exhausted."[36]

The verdict finding Appellant not guilty by reason of insanity vested the court with limited jurisdiction over both the subject matter and the person of Appellant.[37] When the effect of the commitment order ended, the court's remaining jurisdiction over appellant was limited to one purpose: to order Appellant's release.

The State erroneously relies on *In re D.T.M.*[38] In that case, this court held that defects in the certificates of medical examination were not jurisdictional but mere pleadings requiring objection. We went on to say, "[i]n a civil case, fundamental error occurs only in rare instances in which the record shows on its face that the trial court lacked jurisdiction or where a public interest is directly and adversely affected."[39]

■ Similar to the limited jurisdiction of a trial court to grant a motion for new trial or to extend a probation order, the jurisdiction of a district court to extend a mental commitment order is purely statutory. Since it is not part of the common law grafted on to the Texas system of jurisprudence, the exercise

of this limited jurisdiction must be pursued in the manner prescribed by statute.[40]

The Court of Criminal Appeals has stated:

"When jurisdiction with respect to a particular matter is derived wholly from statute, the statutory provisions are mandatory and exclusive and must be complied with in all respects, and the court in exercising its particular authority is a court of limited jurisdiction."... *Jurisdiction cannot be "substantially" invoked; it either attaches or it does not.* ... "Furthermore, it is likewise axiomatic that where there is no jurisdiction, 'the power of the court to act is as absent as if it did not exist.'..."[41]

As this court has pointed out in connection with a futile attempt to extend an expired probation order, even a timely filed motion to revoke probation does not expand a trial court's jurisdiction to alter or modify the terms of probation after the probation has expired.[42] A trial court, therefore, could not extend a defendant's probation after its expiration. The order of probation had expired. There was no live order to modify. The court's attempted extension of the expired order was a void, not a voidable, act.[43]

■ Similarly, the trial court's attempt to extend the expired order of commitment in the case before us was a void act. The hearing did not breathe new life into the expired order, nor did it constitute an original civil commitment proceeding. Although appeal is not Appellant's exclusive remedy, it is a valid remedy.

We therefore sustain Appellant's first point of error, reverse the order of the trial

34. *Id.*

35. *See id.* at 527–28.

36. *Id.* at 528.

37. Tex.Code Crim. Proc. Ann. art. 46.03, § 4(d).

38. *In re D.T.M.*, 932 S.W.2d 647, 652 (Tex.App.— Fort Worth 1996, no writ).

39. *Id.; see also In re O.L.*, 834 S.W.2d 415, 420 (Tex.App.—Corpus Christi 1992, no writ).

40. *See* Tex Code Crim. Proc. Ann. art. 46.03; *Drew v. State*, 743 S.W.2d 207, 223 (Tex.Crim.App. 1987), *cert. denied*, 509 U.S. 925, 113 S.Ct. 3044,

125 L.Ed.2d 730 (1993); *Dugard v. State*, 688 S.W.2d 524, 528 (Tex.Crim.App.1985), *overruled on other grounds*, *Williams v. State*, 780 S.W.2d 802 (Tex.Crim.App.1989); *Banks v. State*, 79 Tex. Crim. 508, 186 S.W. 840 (1916).

41. *Drew*, 743 S.W.2d at 223 (citations and original emphasis omitted) (emphasis added).

42. *See Arrieta v. State*, 719 S.W.2d 393, 395 (Tex. App.—Fort Worth 1986, pet. ref'd).

43. *See id.*

court, and order the immediate release of Appellant.[44]

LIVINGSTON, J., filed a dissenting opinion.

LIVINGSTON, Justice, dissenting.

Appellant Earl Bruce Roland appeals from the trial court's order renewing his commitment for extended mental health services. In three points of error, Appellant complains that his confinement after the previous commitment order expired violated his due process and equal protection rights and that there is no evidence or factually insufficient evidence to sustain the trial court's commitment order. Because I believe Appellant's confinement is lawful and that sufficient evidence supports his continued commitment, I would affirm the trial court's order.

### TIMELINE

The jury originally found Appellant incompetent to stand trial and the trial court committed him to Rusk State Hospital for an indefinite period in 1984. *See generally* TEX. CODE CRIM. PROC. ANN. art. 46.02 (Vernon 1979 & Supp.1997). In February 1994, the trial court found Appellant not guilty of attempted murder by reason of insanity and committed him to Vernon State Hospital.[1] *See* TEX.CODE CRIM. PROC. ANN. art. 46.03, § 4(d)(2) (Vernon Supp.1997). The original trial court has since extended Appellant's commitment on June 23 of 1994, for a "period of one year," on June 13 of 1995, for a "period not to exceed twelve months," and on

July 31 of 1996, for a "period not to exceed twelve months." Prior to appellant's hearing, an application for renewal had been filed. The application filed on May 17, 1996 states that the order would expire on June 13, 1996. The order granting the motion for a sanity exam was signed on June 10, 1996 and the examination took place at the Tarrant County Jail on June 12, 1996.[2] The doctor's exam report and certificate were filed on June 17, 1996.

### DUE PROCESS AND EQUAL PROTECTION

Appellant complains in his first point of error that the trial court violated his right to due process and equal protection under the federal and state constitutions by conducting the hearing on the State's application to renew the order for extended mental health services 46 days after the court's previous order had expired. In support of his argument that such a hearing must be held before the expiration of the previous order, Appellant relies on section 574.066(f) of the Health and Safety Code.[3] *See* TEX. HEALTH & SAFETY CODE ANN. § 574.066(f) (Vernon 1992). Appellant also urges that, under section 574.085 of the Health and Safety Code, the trial court erred in failing to automatically discharge him when the previous order expired.[4] *See* TEX. HEALTH & SAFETY CODE ANN. § 574.085 (Vernon 1992). His emphasis on these provisions is misplaced because these provisions address the procedures dealing with civilly committed patients generally.[5]

---

**44.** This order does not preclude the proper filing of an application for emergency detention in a court of competent jurisdiction.

**1.** During that hearing, the State stipulated that Appellant had previously been found not guilty by reason of insanity of attempted capital murder in 1980.

**2.** At some time prior to the exam—and prior to the expiration of the order—appellant was returned to the Tarrant County jail.

**3.** Section 574.066(f) states:
   A court may not renew an order unless the court finds that the patient meets the criteria for extended mental health services prescribed by Sections 574.035(a)(1), (2), and (3). The court must make the findings prescribed by this subsection to renew an order, regardless of whether

a hearing is requested or set. A renewed order authorizes treatment for not more than 12 months.

**4.** Section 574.085 states:
   The facility administrator of a facility to which a patient was committed or from which a patient was required to receive temporary or extended inpatient or outpatient mental health services shall discharge the patient when the court order expires.

**5.** The Health and Safety Code also generally sets forth the *criteria* by which the trial court may grant, by clear and convincing evidence, an original application or a renewal for extended mental health services. *See* TEX.CODE CRIM. PROC. ANN. art. 46.03, § 4(d) (Vernon Supp.1997); *Lopez v. State*, 775 S.W.2d 857, 859 (Tex.App.—San Antonio 1989, no writ).

As a previously committed patient who has been acquitted of a criminal offense by reason of insanity, Appellant's confinement and release are governed by the code of criminal procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 46.03; *see also Rodriguez v. State*, 899 S.W.2d 658, 660 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995) (appellant mistaken in premise that articles 46.02 and 46.03 are controlled by requirements in Health and Safety Code); *Lopez*, 775 S.W.2d at 860 (state not required to comply with provisions of mental health code where proceeding governed by code of criminal procedure). *See generally* TEX. GOVT.CODE ANN. § 311.026(b) (Vernon 1988) (specific version of statute controls over general version). In the *Rodriguez* case, the Court of Criminal Appeals, in an en banc decision, specifically held that articles 46.02 and 46.03 "govern the examination of a defendant for competency and insanity." *Rodriguez*, 899 S.W.2d at 660.

In *Rodriguez*, the appellant was charged with capital murder, and on July 31, 1991, the trial court ordered a competency examination. That exam was not done until December 3, 1991, and the doctor's medical report determining the appellant to be competent to stand trial was not filed until December 16, 1991, nearly five months later. The appellant specifically attacked the doctor's delay in examining him as failing to comply with articles 46.02 and 46.03 that required a written report to be forwarded to the trial court within 30 days of the order. The appellant did not object to the doctor's non-compliance at trial, and the State argued that he forfeited his right to complain of this delay on appeal, citing *Marin* and Texas Rule of Appellate Procedure 52(a). TEX. R.APP. P. 52(a); *Marin v. State*, 851 S.W.2d 275, 280 (Tex.Crim.App.1993). I respectfully believe, *Rodriguez*, which held that the appellant had forfeited his right to complain of the delay on appeal, controls. *Rodriguez*, 899 S.W.2d at 662. "[I]f the mental health expert's delay will affect the litigants, it is incumbent upon them to bring the delay to the attention of the trial court.... Appellant's failure to object to the delay of Dr. Sparks has forfeited his right to complain of the delay on appeal." *Id.*

Following *Rodriguez*, I would therefore reach two conclusions. First, the appellant has waived his complaint on appeal. No objection was made at his hearing, he was represented by counsel, and he appeared at the hearing.

Article 46.03 of the code of criminal procedure provides that a person committed after acquittal from a criminal offense by reason of insanity "may only be discharged by order of the committing court in accordance with the procedures specified in this subsection." *See* TEX.CODE CRIM. PROC. ANN. art. 46.03, § 4(d)(5). This majority believes that failure to timely hold a hearing requires immediate release. The contradictory language lies in subsection 4(d)(5). First, the court is required to discharge the acquitted person upon expiration of a commitment order. *Id.* That provision also directs the court to hold a hearing upon receipt of a certificate of discharge by the superintendent of the facility or "upon the expiration of a commitment order," and to do so "prior to the expiration of the commitment order." In essence, the court is instructed to hold such a hearing "upon the expiration" of the order but to do so prior to its expiration. *Id.*

The statute thus creates a mandate that is nearly impossible to comply with, especially in light of the medical examination requirements and the potential requirement of a jury trial. Further, the section allows trial courts to order a renewal regardless of whether the previous order has expired because the court may continue the commitment "until the expiration of the original order, *if one is still in effect*, or the court shall issue a new commitment order...." *Id.* (emphasis added). This language anticipates the likelihood of a time gap between the expiration of the order and the new or continued commitment. It also supports a determination that failure to hold a hearing does not require release.

Second, subsection 4(d)(7) states that a person committed under its provisions may not be committed *"pursuant to this subsection* for a cumulative period of time which exceeds the maximum term provided by law for the crime for which the acquitted person

was tried." It then specifies that the person may be further confined *"pursuant to civil commitment proceedings."* *Id.* art. 46.03, § 4(d)(7) (emphasis added). Thus, the trial court may commit a person who has been acquitted of a crime by reason of insanity for up to the maximum number of years available for the offense committed, in this case, up to 20 years. *See* TEX. PENAL CODE ANN. § 12.33 (Vernon 1994). After that term expires, the trial court may continue to confine the person for a longer time, if necessary, under civil commitment proceedings.

The majority believes that the language directing the court to release the acquitted person "upon expiration of the order" is a mandated direction. Further, they believe that once the expiration date passes, the trial court loses its jurisdiction. However, article 46.03, § 4(d)(1) specifically states that the trial court that originally found the defendant not guilty by reason of insanity retains jurisdiction *over the person* so acquitted. *See* TEX.CODE CRIM. PROC. ANN. art. 46.03, § 4(d)(1) (emphasis added). When subsections 4(d)(5) and (7) are read together, I believe that the trial court had authority to conduct a hearing on the State's application after the previous commitment order had expired to determine whether Appellant's commitment should continue. *See Lopez,* 775 S.W.2d at 858 (renewal hearing held after previous commitment order expired).

For these reasons, I respectfully dissent from the majority opinion and would overrule Appellant's first point of error and address the points of error challenging the sufficiency of the evidence to continue his commitment.