**Earl Bruce ROLAND, Appellant,**

v.

**The STATE of Texas, State.**

No. 2–96–282–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 25, 1999.

David A. Pearson, IV, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, David M. Curl and Tim Bednarz, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Before LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION ON REMAND

DIXON W. HOLMAN, Justice.

On original submission, this court determined that Earl Bruce Roland's due process rights were violated when the trial court held a hearing on the State's application for extended mental health services after the previous commitment order had expired. *See Roland v. State,* 951 S.W.2d 169 (Tex.App.— Fort Worth, 1997) *reversed* 973 S.W.2d 665 (Tex.1998). We therefore reversed the trial court's judgment. On the State's application for writ of error, the supreme court held that, although a timely hearing is mandatory, Roland is not entitled to automatic release. Therefore, that court reversed this court's judgment and remanded to us for consideration of Roland's remaining points. In his two remaining points, Roland contends that there is no evidence or factually insufficient evidence to sustain the trial court's commitment order. Because we determine that sufficient evidence supports his continued commitment, we overrule Roland's remaining points and affirm the trial court's judgment.

## FACTS

In 1984, Roland doused his step-father with gasoline, stabbed him, and set him on fire. He was indicted for attempted murder. At that time, a jury found that he was incompetent to stand trial. Therefore, the trial court committed him to Rusk State Hospital for an indefinite period. *See generally* Tex. Code Crim. Proc. Ann. art. 46.02 (Vernon 1979 & Supp.1999). In February of 1994, the trial court found Roland not guilty of attempted murder by reason of insanity and committed him to Vernon State Hospital.[1]

See Tex.Code Crim. Proc. Ann. art. 46.03 § 4(d)(2) (Vernon Supp.1999). The trial court extended Roland's commitment in June of 1994, in June of 1995, and in July of 1996. The most recent extension forms the basis of this appeal.

## SUFFICIENCY OF EVIDENCE

Roland complains that there is no evidence or factually insufficient evidence to support the trial court's order renewing the commitment order. He contends that the State failed to prove by clear and convincing evidence that he met the statutory criteria to justify renewing his commitment.

## MENTAL HEALTH CODE

For Roland's involuntary commitment to continue, the State had to prove that he met the criteria for involuntary commitment set out in the health and safety code. *See* Tex. Code Crim. Proc. Ann. art. 46.03, § 4(d)(2), (5). Under the health and safety code, the State was required to prove that: (1) Roland was mentally ill; (2) he was likely to cause serious harm to others; or would, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, would continue to experience deterioration of his ability to function independently, and was unable to make a rational and informed decision as to whether or not to continue his treatment; and (3) his condition was likely to continue for more than ninety days. Tex. Health & Safety Code Ann. § 574.035(a) (Vernon Supp.1999).

## STANDARD OF REVIEW

### No Evidence Point

In determining a "no-evidence" point, we are to consider all of the evidence in the light most favorable to the party in whose favor the judgment has been rendered, and to indulge every reasonable inference from the evidence in that party's favor. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998); *Merrell Dow Pharm., Inc. v.*

1. During that hearing, the State stipulated that Roland had previously been found not guilty by

reason of insanity of attempted capital murder in 1980.

*Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d. 660, 661 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *See Formosa Plastics Corp.,* 960 S.W.2d at 48; *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996).

A "no-evidence" point may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *See Merrell Dow Pharm.,* 953 S.W.2d at 711 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L. REV. 361, 362–63 (1960)). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *See Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992).

### Insufficient Evidence

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406 (Tex.1998).

### Court–Ordered Extended Mental Health Services

In court-ordered mental commitment proceedings, the applicable standard of proof before the trial court is the clear and convincing standard. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(a). Clear and convincing evidence is defined as that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See Niswanger v. State,* 875 S.W.2d 796, 799 (Tex.App.—Waco 1994, no writ); *In re P.W.,* 801 S.W.2d 1, 2 (Tex.App.—Fort Worth 1990, writ denied). It is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *See In re P.W.,* 801 S.W.2d at 2. While the evidence must preponderate more heavily than the weight of credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *See id.* To be clear and convincing, the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior, either of which would tend to confirm the likelihood of serious harm to the person or to others, or the proposed patient's distress and the deterioration of ability to function. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(e).

### THE EVIDENCE

#### State's Witnesses

At the hearing, the State called Dr. Mary L. Cannon, a forensic psychiatrist who had been appointed by the court as a disinterested expert to examine Roland. She testified that she had examined him on June 12, 1996. She stated that Roland "was refusing to take oral medication and was being given injectable Haldol." She stated that Roland had to be injected because of his refusal to voluntarily take medication to control his delusions. Cannon stated that Roland exhibited loose thought productions and delusional symptoms during her interview with him. She further stated that, in her opinion, Roland would continue to be psychotic without medication. She warned against Roland's release and stated her belief that Roland would again become psychotic and violent without the medication that he required but would not voluntarily take. She gave the opinion that Roland could pose a serious risk of danger to others or to himself if released. Finally, Dr. Cannon testified that, in her opinion, Roland was still insane.

## Roland's Witnesses

Roland testified in his own behalf. He confirmed that he was receiving medication by injection. He also admitted that he refused to take his medication at the Tarrant County Jail two years earlier, but claimed he did so because his doctor had taken him off of it. He suggested that Dr. James C. Sikes, his treating physician from Wichita Falls State Hospital, was "against" him. He accused Sikes of seeing "me by myself which [is] illegal."

Roland then introduced the Certificate of Medical Examination from Dr. Sikes[2] that stated Roland would not take his medication voluntarily. In a May 15, 1996 affidavit attached to the exhibit, Dr. Sikes stated:

> [Roland] has chronic paranoid schizophrenia. He does not see himself as needing treatment. Without medicine he is likely to deteriorate and again exhibit symptoms dangerous to others such as delusional thinking, agitation and aggressiveness. The only way treatment and supervision can be provided is in the hospital with medication over his objection.—This requires re-authorization and examination each month.

Dr. Sikes did indicate that he was not of the opinion that Roland was mentally incompetent or that emergency detention was the least restrictive means to affect the necessary restraint of Roland. However, he also stated that Roland required structure and support and he needed "psychoactive medication (long acting injectable anti-psychotic medication) [that] he will not take . . . voluntarily."

Roland also introduced a Certificate of Medical Examination from Dr. Emory J. Sobiesk. Dr. Sobiesk stated, in the brief diagnosis section, that Roland suffered from "schizoaffective disorder, bipolar type; polysubstance dependence; anti-social personali-

ty disorder." Dr. Sobiesk believed Roland to be mentally ill and likely to cause serious harm to himself or others if not treated.

Dr. Sobiesk then expressed the opinion that Roland did not require hospitalization and that, based on the length of time he had been hospitalized, consideration might be given to court-ordered outpatient treatment.

## TRIAL COURT'S FINDINGS

At the conclusion of the hearing, the trial court issued an order renewing Roland's commitment for extended mental health services. In doing so, the court made the following findings by clear and convincing evidence:

1. 'Earl Bruce Roland continues to suffer mental illness.

2. As a result of this mental illness, Earl Bruce Roland is likely to cause serious harm to others, and will, if not treated, continue to suffer severe and abnormal mental, emotional or physical distress and will continue to experience deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment.

3. Earl Bruce Roland's 'condition is expected to continue for more than 90 days.

4. In-patient treatment at Wichita Falls State Hospital is the most appropriate and least restrictive means of treating Mr. Roland's continuing mental illness.

## ANALYSIS

From all of the evidence presented at the hearing, it is undisputed that, without treatment, Roland would suffer severe and abnormal mental, emotional, and physical distress, would experience deterioration of his ability to function independently, and would be unable to make rational and in-

---

**2.** Roland seems to suggest that only Dr. Cannon's testimony can be considered because neither Dr. Sikes nor Dr. Sobiesk testified at the hearing. He bases this argument on section 574.035(g) of the health and safety code. Tex. Health & Safety Code Ann. § 574.035(g). Roland ignores the fact that he introduced and relied on the certificates of Dr. Sikes and Dr. Sobiesk. Accordingly, even if those certificates constitute

hearsay, as he now argues, they were not objected to. See Tex.R. Evid. 802; Lopez v. State, 775 S.W.2d 857, 859 (Tex.App.—San Antonio 1989, no writ). Additionally, nothing in section 574.035(g) states that the testimony required to support the trial court's finding be sufficient in and of itself. See Lopez, 775 S.W.2d at 859 (rejecting argument that only "direct evidence" can support trial court's finding).

802

formed decisions as to whether to submit to treatment. *See Niswanger*, 875 S.W.2d at 801. Dr. Cannon testified that if Roland did not take his medication, he would constitute a danger to himself and others. The certificates of Drs. Sikes and Sobiesk confirm this assessment. All of the doctors concurred in the opinion that Roland currently would not voluntarily take medication and there was evidence that he had refused to do so in the past. We believe that Roland's chronic refusal to take his medication is evidence that, as a whole, "tends to confirm" the likelihood of serious harm to Roland or others as well as the deterioration of his ability to function—thus meeting the requirements of clear and convincing evidence. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(a); *see also Mezick v. State*, 920 S.W.2d 427, 430 (Tex. App—Houston [1st Dist.] 1996, no writ); *Niswanger*, 875 S.W.2d at 796.

Furthermore, there was no testimony or other evidence that recommended Roland's release from court-ordered extended mental health services. Rather, Dr. Sobiesk's affidavit merely suggested that court-ordered outpatient treatment might be considered as the next step in Roland's treatment. Neither Dr. Cannon nor Dr. Sikes agreed with this recommendation.

Reviewing only the evidence in support of the court's finding, we determine that the evidence is legally sufficient to support the trial court's finding. *See Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993). Furthermore, our review of the entire record does not convince us that the evidence is so weak as to render the trial court's finding clearly wrong or unjust. *See Niswanger*, 875 S.W.2d at 801. We overrule Roland's second and third points of error and affirm the trial court's judgment.