TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00092-CV







Austin Police Association, Combined Law Enforcement Associations of Texas and
Catherine M. Haggerty, Appellants


v.



City of Austin and Brian Rodgers and Linda Curtis, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. GN200259, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING






 This appeal concerns the efforts of three incumbent, two-term city council members
to secure a place on the ballot for the next Austin city council election. The Austin city charter limits
council members to two consecutive terms. A two-term, incumbent council member may
nevertheless "become a candidate for an additional term or terms and serve if elected" if that council
member collects the requisite number of signatures on a petition to be filed at the same time as the
council member's application for candidacy. Austin, Tex., Code, City Charter, art. II, § 3 (2001). 
This dispute centers on whether the city charter conflicts with the state election code governing the
number of signatures required to be filed. Appellants (1) maintain that the number of signatures
required by the city charter conflicts with section 143.005 of the state election code. Accordingly,
they sought a declaratory judgment from the district court declaring that because a conflict exists,
the state election code should govern the number of signatures required. The district court disagreed
and rendered judgment declaring that the two provisions could be harmonized. We will affirm the
district court's judgment.


BACKGROUND

 In 1994, City of Austin voters approved an amendment to the city charter establishing
term limits for city council members. The city charter now prohibits any person from serving in the
same position on the city council for more than two consecutive terms. Austin, Tex., Code, City
Charter, art. II, § 3. But the city charter also includes one exception to the term limitation:


[A]ny Councilmember may become a candidate for an additional term or terms and
serve if elected, if at the time of filing the application to be a candidate for . . . a place
on the Council, the application is accompanied by a petition requesting that the
incumbent be authorized to be a candidate, signed by a minimum of five (5) per cent
of the qualified voters of the city . . . .



In other words, a two-term incumbent may overcome the term limit restriction by submitting a
petition signed by five percent of the qualified voters, or roughly 20,915 signatures. (2)

 In contrast, the state election code is silent on the issue of term limits. It does,
however, address petitions that are "required or authorized to be filed in connection with a
candidate's application for a place on the ballot for an office of a home-rule city." Tex. Elec. Code
Ann. § 143.005(d) (West Supp. 2002). (3) According to the election code, the minimum number of
signatures that must appear on such a petition is the greater of twenty-five (25) or one-half of one
percent of the total votes cast in the last mayoral election, or in this case 178. (4) Id.

 Appellants consist of a group of registered voters who support and wish to vote for
at least one of the three two-term incumbents at the next city council election. They sought a
declaration that the city charter and the election code conflict, in which event, they contend, the
charter provision is invalid and the state election code should govern the total number of signatures
required on a petition to avoid the term limits. The City of Austin counterclaimed, (5) requesting the
court to declare that the city charter and the election code are not in conflict and can be harmonized. 
The district court rendered judgment against appellants and in favor of the City. Appellants bring
this appeal.


DISCUSSION

 Austin is a home-rule city. Austin, Tex., Code, City Charter, ed. note to preamble
(2001); Quick v. City of Austin, 7 S.W.3d 109, 122 (Tex. 1999); see also Tex. Const. art. XI, § 5
interp. commentary (West 1993) (authorizing home rule in cities with populations of more than
5000). Home-rule cities are cloaked with broad discretionary powers under the Texas Constitution
and statutes. Tex. Const. art. XI, § 5; Tex. Loc. Gov't Code Ann. § 51.072 (West 1999); Dallas
Merchant's & Concessionaire's Ass'n v. City of Dallas, 852 S.W.2d 489, 490-91 (Tex. 1993). They
possess "the full power of self government and look to the legislature not for grants of power, but
only for limitations on their power." Dallas Merchant's, 852 S.W.2d at 490-91. These cities may
adopt or amend their own charters by a majority vote of their qualified voters. Tex. Const. art. XI,
§ 5.

 A city's ordinance or charter provision is presumed to be valid. City of Brookside
Village v. Comeau, 633 S.W.2d 790, 792 (Tex. 1982); City of Houston v. Todd, 41 S.W.3d 289, 295
(Tex. App.--Houston [1st Dist.] 2001, pet. denied). But no city ordinance or charter provision "shall
contain any provision inconsistent with the Constitution of the State, or of the general laws enacted
by the Legislature of this State." Tex. Const. art. XI, § 5. An ordinance or charter provision that
attempts to regulate a subject matter preempted by state statute is unenforceable to the extent it
conflicts with that statute. Dallas Merchant's, 852 S.W.2d at 491. The mere fact that the legislature
addresses a subject matter area, however, does not prevent a home-rule city from regulating the same
subject area through a city ordinance or city charter provision. Courts will not hold a state statute
and a city ordinance or charter provision repugnant to each other if the court can reasonably
harmonize the two. Id. Determining whether a city charter provision conflicts with the state election
code presents us with a pure question of law, which we review de novo. Barber v. Colorado Indep.
Sch. Dist., 901 S.W.2d 447, 450 (Tex. 1995).

 Appellants argue on appeal that section 143.005(d) of the election code should be
broadly applied, and because it refers to any petition filed in connection with a candidate's
application for a place on the ballot, it applies to every such petition. They ask us to declare the
charter's term limit exception invalid because it conflicts with state law. (6) Appellees counter that
"[t]he state law applies to ballot access petitions, the procedure whereby an otherwise qualified
candidate has his or her name placed on a ballot"; the Austin city charter provision, on the other
hand, governs the eligibility of an incumbent to become a candidate. We agree with the City's
contention.

 A comparison of the terminology employed by the state election code and the term
limits provision in the city charter evidences this distinction between ballot access and eligibility for
candidacy. (7) Chapter 143 of the state election code applies only to candidates for a city office. Tex.
Elec. Code Ann. § 143.001 (West 1986). Indeed, the chapter is entitled, "Candidate for City Office,"
and section 143.005(d) of that chapter addresses "any petition required or authorized to be filed in
connection with a candidate's application for a place on the ballot for an office of a home-rule city." 
Id. § 143.005(d) (West Supp. 2002) (emphasis added); cf. id. § 141.001 (West 1986) (listing
requirements "[t]o be eligible to be a candidate for . . . public elective office . . . ."). (8)

 In contrast, the city charter provision at issue here renders a two-term incumbent
council member ineligible to be a candidate or to serve in the same position for a third consecutive
term. Austin, Tex., Code, City Charter, art. II, § 3. This ineligibility or disqualification can be
removed only at the request of the requisite number of city voters, evidenced by a petition filed in
accordance with the city charter provision. The provision stipulates that a council member may
become a candidate if along with an application, the council member files a petition "requesting that
the incumbent be authorized to be a candidate." Id. In other words, prior to the filing of this
petition, the council member is ineligible to be a candidate, even if the member files an application. 
See Tex. Elec. Code Ann. § 141.001(a); Wentworth v. Meyer, 837 S.W.2d 148, 151 (Tex. App.--San
Antonio, orig. proceeding) (holding that one ineligible to hold office cannot be candidate for that
office), overruled on other grounds, 839 S.W.2d 766 (Tex. 1992). And chapter 143 of the state
election code does not yet apply to the ineligible council member, as that chapter applies only to
qualified candidates for city office. See Tex. Elec. Code Ann. § 143.001. Once the council member
removes the impediment to candidacy, the council member may then seek a place on the ballot by
complying with the ballot access requirements.

 Further evidencing this distinction between ballot access and eligibility for candidacy
is the provision in the city charter that allows a candidate to file a petition to reduce the filing fee that
must accompany a candidate's application. Austin, Tex., Code, City Charter, art. III, § 4 (2001). 
That provision begins with the phrase, "Any qualified person who desires to become a candidate." 
Id. (emphasis added). The petition authorized by the charter provision must include signatures of
registered voters "requesting that the name of the candidate be placed on the ballot." Id. This type
of petition, which is filed by an otherwise qualified candidate seeking a place on the ballot, is the
type of petition contemplated by chapter 143 of the state election code. It serves a distinct and
separate purpose, i.e., access to the ballot, as contrasted with a petition required to remove an
ineligibility due to the term limit restriction. (9)

 In sum, we hold that the petition that must be filed by a two-term incumbent council
member who seeks a third consecutive term in office is properly characterized as an eligibility
requirement. Until this petition is filed, the incumbent is not eligible to become a candidate for the
office sought. Because the state election code only addresses petitions filed in connection with a
candidate's application for office, it does not conflict with the city charter provision, and the two can
be reasonably harmonized without diminishing their effect. Accordingly, we overrule appellants'
issue and affirm the district court's judgment.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: March 15, 2002

Publish

1. Appellants consist of Austin Police Association, Combined Law Enforcement Associations of
Texas, and Catherine M. Haggerty; we refer to them collectively as "appellants" for the sake of
convenience.
2. The parties agreed to stipulated facts, which were submitted to the trial court. Among those
stipulations was the fact that "[u]sing 418,298 as a working number, the number of signatures that
the charter requires for each two-term incumbent is 20,915. The actual minimum number of
signatures that must appear on the petition under the charter amendment may be somewhat greater
or lesser, depending on the number of registered voters on the day the petition is filed."
3. Section 143.005(d) provides in full:


For any petition required or authorized to be filed in connection with a candidate's
application for a place on the ballot for an office of a home-rule city, the minimum
number of signatures that must appear on the petition is the greater of:



 25; or

 one-half of one percent of the total vote received in the territory from which the
office is elected by all candidates for mayor in the most recent mayoral general
election.



Tex. Elec. Code Ann. § 143.005(d) (West Supp. 2002).
4. The parties also stipulated that in the most recent Austin mayoral general election, 35,438 votes
were cast, and one-half of one percent of that number is 178.
5. Appellees Brian Rodgers and Linda Curtis are registered voters who intervened in the suit. 
Their interests appear to coincide with the City of Austin's position. Thus, we will address the
intervenors and the City of Austin collectively as "the City," unless our discussion requires us to
distinguish among them.
6. If we were to hold the city charter's term limit exception invalid, that would arguably result
in an absolute term limitation, rather than a court-ordered amendment to the number of signatures
required to avoid the term limit restriction. Because we hold that the charter provision does not
conflict with the state election code, we need not reach this question.
7. We note that the City is authorized to implement both additional candidate eligibility
requirements, see Tex. Loc. Gov't Code Ann. § 26.041(3) (West 1999), and ballot access
requirements. See Tex. Elec. Code Ann. § 143.005(a) (West Supp. 2002).
8. In support of their argument that the state election code should preempt the city charter
provision, appellants direct us to the phrase, "any petition required or authorized to be filed in
connection with a candidate's application for a place on the ballot for an office." Tex. Elec. Code
Ann. § 143.005(d) (emphasis added). They argue that the City has construed this phrase to mean
"any petition in lieu of a filing fee" and has consequently attempted to limit the applicability of the
statute to only those petitions despite the statute's broad language. Appellants' focus is misplaced. 
The applicability of the state statute does not depend upon the breadth of the phrase "any petition";
rather, the focus of our inquiry is whether a two-term incumbent can be a candidate and thus subject
to chapter 143 of the state election code.
9. An earlier version of section 143.005 expressly tied the ballot access petition to the filing fee
requirement; that is, in lieu of a filing fee, a candidate could obtain a place on the ballot if the
candidate submitted a petition with a certain number of signatures. Act of May 13, 1985, 69th Leg.,
R.S., ch. 211, sec. 1, § 143.005(c), 1985 Tex. Gen. Laws 802, 960 (Tex. Elec. Code Ann. § 143.005,
since amended). The statute also established the maximum number of signatures a city could
require. Id. The 1987 amendment moved the petition provision to a new subsection that did not
refer to a filing fee. Act of April 23, 1987, 70th Leg., R.S., ch. 54, sec. 11, § 143.005(d), 1987 Tex.
Gen. Laws 131, 134-35. Appellants contend this was a substantive amendment intending to broaden
its application to any petition filed in connection with an election. The same amendment also
changed the phrase "maximum number of signatures that must appear on a petition in lieu of filing
fee" to "the minimum number of signatures that must appear on the petition." Id. (emphasis added). 
Following appellants' reasoning would require us to recognize that the statute now provides only a
minimum requirement and not a maximum requirement, thus eliminating any conflict between the
city charter and the statute. Because we rely on other grounds in holding that no conflict exists
between the city charter and the state statute, we do not address the effect of the amendments to the
election code.